**DECHERT LLP**
Michael J. Sage (MS-6998)
Brian E. Greer (BG-1011)
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Attorneys for The Bank of New York*
*Mellon Trust Company, N.A., as First Lien Trustee*

**ROPES & GRAY LLP**
Mark Somerstein
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone:  (212) 596-9000
Facsimile:  (212) 596-9090

Stephen Moeller-Sally (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone:  (617) 951-7000
Facsimile:  (617) 951-7050

*Attorneys for Wilmington Trust, N.A., as*
*1.5 Lien Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
In re:                                                              :        Chapter 11
                                                                    :
MPM Silicones, LLC, et al.,[1]                      :        Case No. 14-22503 (RDD)
                                                                    :
                                    Debtors.              :        (Jointly Administered)
--------------------------------------------------------------x

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Juniper Bond Holdings I LLC (9631), Juniper Bond Holdings II LLC (9692), Juniper Bond Holdings III LLC (9765), Juniper Bond Holdings IV LLC (9836), Momentive Performance Materials China SPV Inc. (8469), Momentive Performance Materials Holdings Inc. (8246), Momentive Performance Materials Inc. (8297), Momentive Performance Materials Quartz, Inc. (9929), Momentive Performance Materials South America Inc. (4895), Momentive Performance Materials USA Inc. (8388), Momentive Performance Materials Worldwide Inc (8357), and MPM Silicones, LLC (5481).

**JOINT RESPONSE OF THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., IN ITS CAPACITY AS FIRST LIEN TRUSTEE, AND
WILMINGTON TRUST, N.A., IN ITS CAPACITY AS 1.5 LIEN TRUSTEE, TO
THE OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE DEBTORS' MOTION TO OBTAIN POSTPETITION
FINANCING, USE CASH COLLATERAL, AND GRANT ADEQUATE
PROTECTION TO THE PREPETITION SECURED LENDERS**

The Bank of New York Mellon Trust Company, N.A., in its capacity as trustee

(the "**First Lien Trustee**") under that certain indenture dated as of October 25, 2012, as

supplemented by that certain supplemental Indenture, dated as of November 12, 2012 (as further

modified, supplemented and/or amended and in effect on the date hereof) for the 8.875% First-

Priority Senior Secured Notes due 2020 issued by Debtor Momentive Performance Materials Inc.

("**MPM**") and guaranteed by certain of the above-captioned debtors and debtors in possession

(collectively with MPM, the "**Debtors**"), and Wilmington Trust, N.A., as successor indenture

trustee (the "**1.5 Lien Trustee**" and, together with the First Lien Trustee, the "**Trustees**") under

that certain indenture dated as of May 25, 2012, for the 10% Senior Secured Notes due 2020

issued by MPM and guaranteed by certain of the Debtors, hereby file this joint response (the

"**Response**") to the *Objection of the Official Committee of Unsecured Creditors to the Debtors'*

*Motion to Obtain Postpetition Financing, Use Cash Collateral, and Grant Adequate Protection*

*to the Prepetition Secured Lenders* [Dkt. No. 204] (the "**Objection**"), filed by the official

committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Committee**"),

to the *Debtors' Motion for Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363(c),*

*363(d), 364(c), 364(d), 364(e) and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014: (I)*

*Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing Debtors to Use Cash*

*Collateral; (III) Granting Adequate Protection to Prepetition Secured Lenders; and (IV)*

*Scheduling a Final Hearing Pursuant to Bankruptcy Rules 2002, 4001 and 9014* [Dkt. No. 13]

(the "**DIP Financing Motion**")[2] and the Debtors' proposed form of final order granting the DIP

Financing Motion [Dkt. No. 198, Exhibit A] (the "**Final DIP Order**").  In support of this

Response, the Trustees respectfully represent as follows:

## PRELIMINARY STATEMENT

1.    The Committee's Objection raises issue with, among other things, certain

provisions in the proposed Final DIP Order as to the Prepetition Secured Parties relating to the

Debtors' section 506(c) waiver, the waiver of the "equities of the case" exception under section

552(b) of the Bankruptcy Code and the limitation on marshaling.  The foregoing provisions in

the proposed Final DIP Order were heavily negotiated aspects of the Debtors' DIP financing and

are core elements of a settlement by and between the Debtors and a number of their secured

creditor constituencies in these chapter 11 cases, including the Trustees.  In consideration for

these provisions, the Trustees have made substantial concessions as part of the negotiations on

the Debtors' DIP financing, including, among other things, the Trustees' consent to being primed

by approximately $570 million, as well as agreeing to partially fund these chapter 11 cases

through a substantial Carve-Out.  See Final DIP Order ¶ 7(b).  These concessions bestow a direct

benefit on the Debtors and their estates by avoiding costly litigation surrounding the provision of

adequate protection to the Trustees and avoid a lengthy valuation trial at this stage of the

Debtors' chapter 11 cases.  This Court should not permit the Committee to blue-line the

negotiated points of an overall deal reached between the Debtors and their various secured

creditor constituencies on the Debtors' DIP financing.[3]

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to those terms in the
DIP Financing Motion or in the proposed Final DIP Order, as applicable.

[3]    The Trustees have relied on the negotiated settlement relating to the Debtors' DIP financing.  To the extent that
this settlement is unraveled, the Trustees respectfully request that this Court (a) approve the DIP Financing
Motion on an interim basis only, so that the Trustees are not unduly prejudiced by their reliance on such

## RESPONSE

I.    The Debtors' waiver under section 506(c) of the Bankruptcy Code as to
the Trustees, the First Lien Noteholders and the 1.5 Lien Noteholders is
<u>customary and should be approved</u>.

2.    The Committee's Objection to the section 506(c) waiver as to the

Trustees, the First Lien Noteholders and the 1.5 Lien Noteholders should be overruled.  Section

506(c) of the Bankruptcy Code permits a debtor (or a trustee) to recover from property securing

an allowed claim the reasonable costs of preserving such property.  <u>See</u> 11 U.S.C. § 506(c).  As

consideration for the Trustees consenting to being primed by approximately $570 million and

agreeing to the Carve-Out, the Debtors have agreed to provide the Trustees, the First Lien

Noteholders and the 1.5 Lien Noteholders with a section 506(c) waiver.

3.    It is well established that the Debtors are vested with the discretion to

waive section 506(c) of the Bankruptcy Code.  As a threshold matter, section 506(c) claims are

available to, and are an asset of, the Debtors, and not to any other creditor or party-in-interest.

<u>See</u> <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 6 (2000).  Indeed,

the right of a party-in-interest, including the Committee, to be heard on any issue arising in a

bankruptcy case pursuant to section 1109(b) of the Bankruptcy Code does not entitle it to usurp

the Debtors' exclusive role under section 506(c) of the Bankruptcy Code.  <u>See id.</u> at 4.

4.    Moreover, the section 506(c) waiver is particularly appropriate where, as

here, the Trustees have consented to being primed by approximately $570 million and have

agreed to a substantial Carve-Out.  Indeed, this Court has repeatedly endorsed section 506(c)

waivers as to a debtor's prepetition lenders in approving DIP financing on a final basis.  <u>See,</u>

<u>e.g.</u>, <u>In re TBS Shipping Servs.</u>, Case No. 12-22224 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2012)

_____

settlement, the First Lien Trustee can continue its discovery and the Trustees can assert objections they deem
appropriate, and (b) strike the Carve-Out.  <u>See infra</u> p. 6, ¶ 9 & n.5.

[Dkt. No. 75]; <u>In re Hostess Brands, Inc.</u>, Case No. 12-22052 (RDD) (Bankr. S.D.N.Y. Feb. 3,

2012) [Dkt. No. 254]; <u>In re The Reader's Digest Ass'n, Inc.</u>, Case No. 09-23529 (RDD) (Bankr.

S.D.N.Y. Oct. 7, 2009) [Dkt. No. 152]; <u>In re Delphi Corp.</u>, Case No. 05-44481 (RDD) (Bankr.

S.D.N.Y. Jan. 5, 2007) [Dkt. No. 6461].

II.     The Debtors' waiver of the "equities of the case" exception under section
        552(b) of the Bankruptcy Code is customary and should be approved.

        5.     There is no basis for the Committee's argument that the waiver of the

"equities of the case" exception under section 552(b) of the Bankruptcy Code should not be

approved.  Section 552(b) of the Bankruptcy Code generally provides that a perfected lien on

prepetition collateral extends to postpetition proceeds of such collateral unless the court orders

otherwise based on the "equities of the case."  <u>See</u> 11 U.S.C. § 552(b).  Courts in this district

have generally held that a waiver of section 552(b) of the Bankruptcy Code is appropriate where

the lenders, as here, have subordinated their claims to a carve-out.  <u>See</u> <u>In re Blockbuster Inc.</u>,

Case No. 10-14997, 2010 WL 4873646, at *18 (Bankr. S.D.N.Y. Sept. 24, 2010); <u>In re General</u>

<u>Growth Props., Inc.</u>, 412 B.R. 122 (Bankr. S.D.N.Y. 2009).  Moreover, the Debtors' waiver of

the "equities of the case" exception is part and parcel of a settlement relating to the adequate

protection provided to the Trustees, the First Lien Noteholders and the 1.5 Lien Noteholders,

thereby avoiding costly litigation surrounding these issues before this Court.

        6.     In multiple cases, this Court has entered orders granting a waiver of the

"equities of the case" exception to section 552(b) of the Bankruptcy Code as to a debtor's

prepetition lenders in similar circumstances.  <u>See, e.g.</u>, <u>In re TBS Shipping Servs.</u>, Case No. 12-

22224 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2012) [Dkt. No. 75]; <u>In re Hostess Brands, Inc.</u>, Case

No. 12-22052 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2012) [Dkt. No. 254]; <u>In re Fortunoff Holdings,</u>

<u>LLC</u>, Case No. 09-10497 (RDD) (Bankr. S.D.N.Y. May 5, 2009) [Dkt. No. 659].  Accordingly,

this Court should deny the Committee's Objection to the waiver of the "equities of the case" exception in connection with approval of the proposed Final DIP Order.

III.    <u>The prohibition on marshaling is appropriate</u>.

7.    In addition, the Committee has argued that this Court should not approve a limitation on marshaling.[4]  However, there is nothing unreasonable about granting such a customary waiver.  This Court has granted such relief in other cases.  <u>See, e.g.</u>, <u>In re TBS Shipping Servs.</u>, Case No. 12-22224 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2012) [Dkt. No. 75]; <u>In re Hostess Brands, Inc.</u>, Case No. 12-22052 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2012) [Dkt. No. 254]; <u>In re The Reader's Digest Ass'n, Inc.</u>, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Oct. 7, 2009) [Dkt. No. 152]; <u>In re Delphi Corp.</u>, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Jan. 5, 2007) [Dkt. No. 6461].

8.    Moreover, the proposed Final DIP Order provides that the Trustees, the First Lien Noteholders and the 1.5 Lien Noteholders may not recover from the Avoidance Actions (or any proceeds or property recovered in respect of the Avoidance Actions) until commercially reasonably efforts have been undertaken to pay or otherwise satisfy their claims from the other DIP Collateral.  <u>See</u> Final DIP Order ¶ 9.  As such, any potential standing the

---

[4]    It should be noted that the Committee's ability, if any, to raise this issue is extremely limited.  Traditionally, only a junior lienor may compel the marshaling of assets and generally courts have refused to extend this right to unsecured creditors in bankruptcy proceedings.  <u>See, e.g.</u>, <u>Galey & Lord, Inc. v. Arley Corp. (In re Arlco, Inc.)</u>, 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999) (holding that unsecured creditors have no right to invoke the doctrine of marshaling) (citing <u>Herkimer Cnty. Trust Co. v. Swimelar (In re Prichard)</u>, 170 B.R. 41, 45 (Bankr. N.D.N.Y. 1994)).

While the Committee cites <u>America's Hobby Ctr.</u> for the proposition that an official committee could theoretically be given <u>STN</u> standing to pursue a marshaling claim, <u>America's Hobby Ctr.</u> also recognized that such a claim properly belongs to the Debtors in the first instance.  <u>See</u> <u>Official Comm. of Unsecured Creditors of America's Hobby Ctr. v. Hudson United Bank (In re America's Hobby Ctr.)</u>, 223 B.R. 275, 287-88 & n.6 (Bankr. S.D.N.Y. 1998) (dismissing without prejudice an official committee's marshaling claim and finding "court approval under <u>STN Enterprises</u> of any amendment to the marshaling claim [is required] because the claim obviously belongs to the estate given that only a trustee may assert it as a hypothetical execution creditor and an unsecured creditor has no standing to do so").

Committee could have on this issue as a hypothetical lien creditor has already been addressed in favor of the Committee.

9.      In light of the foregoing, the Committee should not have the benefit of each of the concessions by the Trustees, including the generous Carve-Out, without providing the Trustees with their bargained for provisions.  Absent the Trustees' consent to the Carve-Out, the Debtors should not be able to use the Prepetition Collateral to press their proposed cram-down chapter 11 plan against the Trustees (which the Trustees oppose).  Instead, such costs should be borne solely by the parties supporting such proposed cram-down plan, *e.g.,* the Ad Hoc Committee of Second Lien Noteholders and Apollo.[5]

*[Remainder of page intentionally left blank.]*

---

[5]    Payment of attorneys' fees related to the Debtors' proposed cram-down chapter 11 plan should not be paid from the Prepetition Collateral unless there is a direct benefit to the Trustees or if the Trustees provide their consent. See, e.g., In re Flagstaff Foodservice Corp. (Flagstaff I), 739 F.2d 73 (2d Cir. 1984); In re Flagstaff Foodservice Corp. (Flagstaff II), 762 F.2d 10 (2d Cir. 1985); Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61 (2d Cir. 1998); In re Hotel Syracuse, Inc., 275 B.R. 679 (Bankr. N.D.N.Y. 2002).  Since the Trustees do not support the Debtors' proposed cram-down chapter 11 plan, there is no direct benefit to the Trustees.

## CONCLUSION

WHEREFORE, the Trustees respectfully request that the Court grant relief consistent with the foregoing and such other and further relief as it deems just and proper.

Dated:  New York, New York
         May 22, 2014

**DECHERT LLP**

By:      /s/  Michael J. Sage
         Michael J. Sage
         Brian E. Greer
         1095 Avenue of the Americas
         New York, New York 10036-6797
         Telephone:  (212) 698-3500
         Facsimile:  (212) 698-3599
         michael.sage@dechert.com
         brian.greer@dechert.com

         *Attorneys for The Bank of New York
         Mellon Trust Company, N.A., as First
         Lien Trustee*

**ROPES & GRAY LLP**

By:      /s/  Mark Somerstein
         Mark Somerstein
         1211 Avenue of the Americas
         New York, New York 10036-8704
         Telephone:  (212) 596-9000
         Facsimile:  (212) 596-9090

            -and-

         Stephen Moeller-Sally (*pro hac vice*)
         Prudential Tower
         800 Boylston Street
         Boston, MA 02199-3600
         Telephone:  (617) 951-7000
         Facsimile:  (617) 951-7050

         *Attorneys for Wilmington Trust, N.A.,
         as 1.5 Lien Trustee*