**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------  x
In re:                                                        :
                                                             :
MPM Silicones, LLC, et al.,¹                                 :        Chapter 11
                                                             :
                                                             :
               Debtors.                                      :        Case No. 14-22503 (RDD)
                                                             :        Jointly Administered
------------------------------------------------------------  x
```

**FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 363(d), 364(c), 364(d), 364(e) AND 507 AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS**

Upon the motion, dated April 13, 2014 (the "Motion"), of Momentive Performance Materials Holdings Inc. ("Holdings") and certain of its subsidiaries and affiliates as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases") commenced on April 13, 2014 (the "Petition Date") for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

---

¹ The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Juniper Bond Holdings I LLC (9631); (ii) Juniper Bond Holdings II LLC(9692); (iii) Juniper Bond Holdings III LLC (9765); (iv) Juniper Bond Holdings IV LLC (9836); (v) Momentive Performance Materials China SPV Inc. (8469); (vi) Momentive Performance Materials Holdings Inc. (8246); (vii) Momentive Performance Materials Inc. (8297); (viii) Momentive Performance Materials Quartz, Inc. (9929); (ix) Momentive Performance Materials South America Inc. (4895); Momentive Performance Materials USA Inc. (8388); (xi) Momentive Performance Materials Worldwide Inc. (8357); and (xii); MPM Silicones LLC (5481). The Debtors' executive headquarters are located at 260 Hudson River Road, Waterford, NY 12188.

(as amended, the "<u>Bankruptcy Rules</u>"), and Rule 4001-2 of the Local Bankruptcy Rules for the

United States Bankruptcy Court for the Southern District of New York (this "<u>Court</u>") seeking:

(I)  authorization for the Debtors to obtain debtor-in-possession financing in the

aggregate principal amount of $570,000,000 consisting of (i) an asset-based revolving

facility in the aggregate principal amount of  $270,000,000 (the "<u>DIP ABL Facility</u>," all

extensions of credit (including the issuance of letters of credit) under the DIP ABL

Facility, the "<u>DIP ABL Loans</u>"), consisting of a last-in, first-out tranche in an aggregate

principal amount of $200,000,000 and a first-in, last-out tranche in an aggregate principal

amount of $70,000,000  and (ii) a term loan facility in the aggregate principal amount of

$300,000,000 (the "<u>DIP Term Loan Facility</u>";  all extensions of credit under the DIP

Term Loan Facility, the "<u>DIP Term Loans</u>" and, together with the DIP ABL Loans, the

"<u>DIP Loans</u>") on the terms and conditions set forth in:

- the Interim Order (as defined below) and this final order (this "<u>Order</u>");

- the Senior Secured Debtor-in-Possession and Exit Amended and Restated
Asset Based Revolving Credit Agreement (substantially in the form annexed
to the Motion as <u>Exhibit B</u>, and as amended, supplemented or otherwise
modified, the "<u>DIP ABL Agreement</u>," and, together with the Commitment/Fee
Letters (as defined below) and all other agreements, documents and
instruments executed and delivered in connection with the DIP ABL
Agreement, as amended, supplemented or otherwise modified, the "<u>DIP ABL
Documents</u>"), among Momentive Performance Materials USA Inc. as a
borrower (in such capacity, the "<u>U.S. ABL Borrower</u>"), Momentive
Performance Materials GmbH (a non-Debtor entity) as a borrower (the
"<u>German Silicone Borrower</u>"), Momentive Performance Materials Quartz
GmbH (a non-Debtor entity) as a borrower (the "<u>German Quartz Borrower</u>")
and Momentive Performance Materials Nova Scotia ULC (a non-Debtor
entity) as a borrower (the "<u>Canadian Borrower</u>" and, together with the
German Silicone Borrower and the German Quartz Borrower, the "<u>Non-
Debtor Borrowers</u>," and, together with the U.S. ABL Borrower, the "<u>DIP
ABL Borrowers</u>"), Holdings, Momentive Performance Materials Inc.
("<u>Intermediate Holdings</u>"), each subsidiary of Intermediate Holdings that is
party thereto in its capacity as a guarantor (collectively, the "<u>DIP ABL
Facility Guarantors</u>"), the lenders party thereto from time to time (collectively,

together with the other Secured Parties (as defined in the DIP ABL Agreement), the "DIP ABL Lenders"), JPMorgan Chase Bank, N.A. ("JPMorgan"), as administrative agent and collateral agent for the DIP ABL Lenders (in such capacities, the "DIP ABL Agent"), and J.P. Morgan Securities LLC, Citigroup Global Markets Inc. and Credit Suisse Securities (USA) LLC in their respective capacities as arrangers thereunder (such arrangers, the "DIP Arrangers"); and

- the Senior Secured Debtor-in-Possession Term Loan Agreement (substantially in the form annexed to the Motion as Exhibit C and as amended, supplemented or otherwise modified, the "DIP Term Loan Agreement" and, together with the DIP ABL Agreement, the "DIP Credit Agreements"; the DIP Term Loan Agreement, together with the Commitment/Fee Letters and all other agreements, documents and instruments executed and delivered in connection with the DIP Term Loan Agreement, as amended, supplemented or otherwise modified, the "DIP Term Loan Documents" and, together with the DIP ABL Documents, the "DIP Documents"), among Momentive Performance Materials USA Inc. as a borrower (in such capacity the "DIP Term Loan Borrower"), Holdings, Intermediate Holdings, each domestic subsidiary of Intermediate Holdings that is party thereto in its capacity as a guarantor (collectively, the "DIP Term Loan Facility Guarantors"), the lenders party thereto from time to time (collectively, together with the other Secured Parties (as defined in the DIP Term Loan Agreement), the "DIP Term Loan Lenders", together with the DIP ABL Lenders, the "DIP Lenders"), JPMorgan, as administrative agent and collateral agent for the DIP Term Loan Lenders (in such capacities, the "DIP Term Loan Agent" and, together with the DIP ABL Agent, the "DIP Agents"), and each of the DIP Arrangers in their respective capacities as arrangers thereunder;

(II) authorization for (a) the DIP ABL Facility Guarantors (including the U.S. ABL Borrower in its capacity as a guarantor of the obligations of the Non-Debtor Borrowers) to guarantee on a secured basis the DIP ABL Borrowers' obligations in respect of the DIP ABL Loans on a joint and several basis, including to guarantee any DIP ABL Loans advanced to the Non-Debtor Borrowers and (b) the DIP Term Loan Facility Guarantors to guarantee on a secured basis the DIP Term Loan Borrower's obligations in respect of the DIP Term Loans on a joint and several basis;

(III)  authorization for the Debtors to execute and deliver the DIP Credit Agreements and the other DIP Documents to which they are a party and to perform their

- 3 -

respective obligations thereunder and such other and further acts as may be necessary or appropriate in connection therewith;

(IV)  authorization for the Debtors to (a) use proceeds of the initial borrowing under the DIP ABL Facility and the DIP Term Loan Facility as required pursuant to the DIP Credit Agreements to repay in full the Prepetition ABL Obligations (as defined in paragraph 4(a) below) arising under the Asset-Based Revolving Credit Agreement, dated as of April 24, 2013 (as amended, supplemented or otherwise modified, the "Prepetition ABL Agreement", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "Prepetition ABL Documents"), among each of the DIP ABL Borrowers in their respective capacities as borrowers thereunder (collectively, the "Prepetition ABL Borrowers"), Holdings, Intermediate Holdings, the lenders party thereto from time to time (together with the other Secured Parties (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Lenders") and JPMorgan as administrative agent and collateral agent for the Prepetition ABL Lenders (in such capacities, the "Prepetition ABL Agent") and (b) issue letters of credit under the DIP ABL Facility and to deem all outstanding letters of credit issued under the Prepetition ABL Agreement (the "Prepetition Letters of Credit") as letters of credit issued under the DIP ABL Facility;

(V)  authorization for the Debtors to (a) use the Cash Collateral (as defined in paragraph 14 below) pursuant to section 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined in paragraph 4(b) below), and (b) provide adequate

protection to the following parties with respect to the applicable prepetition secured debt

obligations of:

(i)     the lenders (collectively, together with all other Secured Parties (as defined in the Cash Flow Credit Agreement referenced below), the "Cash Flow Lenders") under the Second Amended and Restated Credit Agreement, dated as of April 24, 2013 (as amended, supplemented or otherwise modified, the "Cash Flow Credit Agreement", and, together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "Cash Flow Documents"), among the U.S. ABL Borrower, the Canadian Borrower and the German Silicone Borrower in their respective capacities as borrowers thereunder, Holdings, Intermediate Holdings, the Cash Flow Lenders and JPMorgan, as administrative agent and collateral agent for the Cash Flow Lenders (in such capacities, the "Cash Flow Agent");

(ii)    the noteholders (collectively, the "First Lien Noteholders") under the Indenture, dated as of October 25, 2012 (as amended, supplemented or otherwise modified, the "First Lien Indenture", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "First Lien Documents"), among MPM Escrow LLC and MPM Finance Corp. as escrow issuers, and The Bank of New York Mellon Trust Company, N.A., as trustee for the First Lien Noteholders (together with the collateral agent for the First Lien Noteholders, the "First Lien Indenture Trustee");

(iii)   the noteholders (collectively, the "1.5 Lien Noteholders") under the Indenture, dated as of May 25, 2012 (as amended, supplemented or otherwise modified, the "1.5 Lien Indenture", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified, the "1.5 Lien Documents"), among Intermediate Holdings, certain of its subsidiaries party thereto and The Bank of New York Mellon, N.A. as trustee for the 1.5 Lien Noteholders (together with the collateral agent for the 1.5 Lien Noteholders, the "1.5 Lien Indenture Trustee"); and

(iv)    the noteholders (collectively, the "Second Lien Noteholders") under the Indenture, dated as of November 5, 2010 (as amended, supplemented or otherwise modified, the "Second Lien Indenture", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified, the "Second Lien Documents"; the Second Lien Documents collectively with the Prepetition ABL Documents, the Cash Flow Documents, the First Lien Documents and the 1.5 Lien Documents, the "Prepetition Debt Documents"), among Intermediate Holdings, certain of its subsidiaries party thereto and The Bank of New York Mellon, N.A. as trustee for the Second Lien Noteholders (together with the

collateral agent for the Second Lien Noteholders, the "Second Lien Indenture Trustee", and together with the 1.5 Lien Indenture Trustee, the First Lien Trustee, the Cash Flow Agent and the Prepetition ABL Agent, the "Prepetition Agents"; and the Prepetition Agents collectively with the Second Lien Noteholders, the 1.5 Lien Noteholders, the First Lien Noteholders, the Cash Flow Lenders and the Prepetition ABL Lenders, the "Prepetition Secured Parties");

(VI)  authorization for the DIP Agents to exercise remedies under the DIP

Documents upon the occurrence and during the continuance of an Event of Default (as

defined in the DIP ABL Agreement and the DIP Term Loan Agreement, as applicable);

(VII) authorization for the Debtors to perform their obligations under, and pay the

fees set forth in the Commitment/Fee Letters (as defined in paragraph 6(d)(iv)), including

with respect to the proposed exit financing facilities referenced in the Commitment/Fee

Letters;

(VIII) subject to entry of this Order, authorization to grant liens to the DIP Agents

on the proceeds of the Debtors' claims and causes of action (but not on the actual claims

and causes of action) arising under chapter 5 of the Bankruptcy Code (collectively, the

"Avoidance Actions");

(IX) subject to entry of this Order, the waiver by the Debtors of any right to seek

to surcharge against the DIP Collateral (as defined in paragraph 8 below) or the

Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(X)  to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the

"Interim Hearing") on the Motion to be held before this Court to consider entry of an

order (the "Interim Order", and, together with this Order, the "Orders") (a) authorizing (i)

the U.S. ABL Borrower, on an interim basis, to borrow under the DIP ABL Facility up to

$130,000,000 of DIP ABL Loans (including through the issuance or deemed issuance of

letters of credit) and (ii) the DIP Term Loan Borrower, on an interim basis, to borrow

under the DIP Term Loan Facility up to $300,000,000 of DIP Term Loans, the collective

proceeds of which shall be used for working capital and general corporate purposes of the

Debtors and their affiliates (including costs related to the Cases) and to repay in full the

Prepetition ABL Obligations, (b) authorizing the Debtors to use the Cash Collateral and

the other Prepetition Collateral, and (c) granting adequate protection to the Prepetition

Secured Parties; and

(XI)  to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final

Hearing") for this Court to consider entry of this Order authorizing and approving on a

final basis the relief requested in the Motion, including without limitation, for the DIP

Borrowers to borrow the balance of the DIP Loans, for the Debtors to continue to use the

Cash Collateral and the other Prepetition Collateral and for the Debtors to grant adequate

protection to the Prepetition Secured Parties.

The Interim Hearing having been held by this Court on April 14, 2014, and the Interim

Order granting the relief sought in the Motion having been entered by this Court on such date,

and notice of the Final Hearing having been given in the manner as set forth in the Interim Order,

and the Final Hearing having been held by this Court on May 23, 2014;

Upon the record made at the Interim Hearing and the Final Hearing, including without

limitation, the admission into evidence of the *Declaration of William H. Carter, Chief Financial

Officer of Momentive Performance Materials Inc.*, *in Support of Chapter 11 Petitions and First

Day Pleadings* and *Declaration of William Q. Derrough in Support of the Motion* filed on the

Petition Date, and the other evidence submitted or adduced and the arguments of counsel made at

the Interim Hearing and the Final Hearing, and after due deliberation and consideration and

sufficient cause appearing therefor;

- 7 -

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Notice of the Motion, the relief requested therein and the Final Hearing was served by the Debtors on (i) the United States Trustee for the Southern District of New York; (ii) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Agents; (iv) counsel to the Prepetition ABL Agent; (v) counsel to the Cash Flow Agent; (vi) counsel to the First Lien Indenture Trustee; (vii) counsel to the 1.5 Lien Indenture Trustee; (viii) counsel to the Second Lien Indenture Trustee; (ix) counsel to Apollo Global Management, LLC and certain of its affiliated funds (collectively, "Apollo"); (x) counsel to Momentive Performance Materials Holdings LLC; (xi) counsel to the ad hoc committee of Second Lien Noteholders represented by Milbank, Tweed, Hadley & McCloy LLP (the "Ad Hoc Committee of Second Lien Noteholders"); (xii) the United States Securities and Exchange Commission; (xiii) the Internal Revenue Service; (xiv) the Debtors' landlords; (xv) the financial institutions where the Debtors maintain deposit accounts; (xvi) the statutory committee of unsecured creditors appointed in the Cases by the U.S. Trustee on April 22, 2014, (the "Committee"); and (xvii) all other parties who requested service pursuant to Bankruptcy Rule 2002.  The notice given by the Debtors of the Motion, the relief requested therein and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c), the local rules of the Southern District of New York, and the Interim Order, and no further notice of the relief sought at the Final Hearing is necessary or required.

3.      *Approval of Motion.*  The relief requested in the Motion is granted as set forth

herein.  Except as otherwise expressly provided in this Order, any objection to the entry of this

Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled

on the merits.

4.      *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but

subject to the limitations thereon contained in paragraphs 26 and 27), the Debtors, for themselves

and not their estates, and subject to paragraph 26 hereof, admit, stipulate, and agree that:

(a)      as of the Petition Date, the Debtors, the Non-Debtor Borrowers and

their non-Debtor affiliates party to or otherwise obligated under the Prepetition ABL

Documents were truly and justly indebted and liable to the Prepetition ABL Lenders, without

defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than

$237 million in respect of loans and other extensions of credit made and Prepetition Letters

of Credit issued pursuant to the Prepetition ABL Documents, plus accrued and unpaid

interest thereon and any fees and expenses (including fees and expenses of attorneys) related

thereto as provided in the Prepetition ABL Documents, plus all other outstanding amounts

that would constitute Obligations under and as defined in the Prepetition ABL Agreement

(collectively, the "Prepetition ABL Obligations");

(b)      the liens and security interests granted by the Debtors to the

Prepetition ABL Agent (for the ratable benefit of the Prepetition ABL Lenders) to secure the

Prepetition ABL Obligations are (i) valid, binding, perfected, enforceable, first priority

(subject to permitted exceptions under the Prepetition ABL Agreement) liens on and security

interests in the Debtors' real and personal property constituting ABL Priority Collateral[2] (as defined in the ABL Intercreditor Agreement referenced below), (ii) valid, binding, perfected, enforceable, second priority (subject to permitted exceptions under the Prepetition ABL Agreement) liens on and security interests in the Debtors' real and personal property constituting Notes Priority Collateral[3] (as defined in the ABL Intercreditor Agreement; such Notes Priority Collateral together with the ABL Priority Collateral of the Debtors, including all Cash Collateral, the "Prepetition Collateral")[4], (iii) not subject to avoidance, recharacterization or subordination (except as set forth in the ABL Intercreditor Agreement) pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iv) subject and subordinate only to other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are senior to the liens securing the Prepetition ABL Obligations;

(c)      the liens and security interests granted to the Prepetition ABL Agent (for the ratable benefit of the Prepetition ABL Lenders) by the Non-Debtor Borrowers and their non-Debtor affiliates party to or otherwise obligated under the Prepetition ABL Documents to secure the Prepetition ABL Obligations are (i) valid, binding, perfected,

---

[2] "ABL Priority Collateral" includes, without limitation, accounts, inventory, certain payment intangibles, accounts and the products and proceeds of the foregoing.

[3] "Notes Priority Collateral" includes, without limitation, real property, fixtures, equipment, general intangibles (other than general intangibles that are ABL Priority Collateral), intercompany indebtedness of Intermediate Holdings and its subsidiaries, and the products and proceeds of the foregoing.

[4] The term "Prepetition Collateral" is defined by reference only to assets and property of the Debtors, and therefore, the term Prepetition Collateral excludes any assets or property of any Non-Debtor Borrower or other non-Debtor affiliate of any Debtor.

enforceable, first priority (subject to permitted exceptions under the Prepetition ABL Agreement) liens on and security interests in such Non-Debtor Borrowers' and non-Debtor affiliates' real and personal property constituting ABL Priority Collateral (as defined in the ABL Intercreditor Agreement), (ii) valid, binding, perfected, enforceable, second priority (subject to permitted exceptions under the Prepetition ABL Agreement) liens on and security interests in such Non-Debtor Borrowers' and non-Debtor affiliates' real and personal property constituting Notes Priority Collateral, (iii) not subject to avoidance, recharacterization or subordination (except as set forth in the ABL Intercreditor Agreement) pursuant to any applicable law and (iv) subject and subordinate only to other valid and unavoidable liens to the extent such liens are senior to the liens securing the Prepetition ABL Obligations;

(d)      as of the Petition Date, the Debtors, the Non-Debtor Borrowers and their non-Debtor affiliates party to or otherwise obligated under the Cash Flow Documents were truly and justly indebted to the Cash Flow Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $20.7 million in respect of loans and other extensions of credit made by the Cash Flow Lenders pursuant to the Cash Flow Documents, plus accrued and unpaid interest thereon and any fees and expenses (including fees and expenses of attorneys and advisors) related thereto as provided in the Cash Flow Documents, plus all other outstanding amounts that would constitute Obligations under and as defined in the Cash Flow Credit Agreement (collectively, the "Cash Flow Obligations");

(e)      the liens and security interests granted by the Debtors to the Cash Flow Agent (for the ratable benefit of the Cash Flow Lenders) to secure the Cash Flow Obligations

are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions

under the Cash Flow Credit Agreement) liens on and security interests in the Prepetition

Collateral constituting Notes Priority Collateral (as defined in the ABL Intercreditor

Agreement), (ii) valid, binding, perfected, enforceable, second priority (subject to permitted

exceptions under the Cash Flow Credit Agreement) liens on and security interests in the

Prepetition Collateral constituting ABL Priority Collateral (as defined in the ABL

Intercreditor Agreement), in each case of (i) and (ii) *pari passu* with the liens on such

collateral securing the First Lien Obligations, (iii) not subject to avoidance,

recharacterization or subordination (except as set forth in the ABL Intercreditor Agreement

and the First Lien Intercreditor Agreement) pursuant to the Bankruptcy Code or applicable

nonbankruptcy law and (iv) subject and subordinate only to (A) the Carve-Out (as defined in

paragraph 7(b) below) and the liens and security interests granted to secure the DIP Loans

and the Adequate Protection Obligations (as defined in paragraph 20 below), (B) prior to

repayment in full of the Prepetition ABL Obligations, the liens securing the Prepetition ABL

Obligations with respect to the ABL Priority Collateral (as defined in the ABL Intercreditor

Agreement) and (C) other valid and unavoidable liens perfected prior to the Petition Date (or

perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy

Code) to the extent such liens are senior to the liens securing the Cash Flow Obligations;

      (f)      the liens and security interests granted to the Cash Flow Agent (for the

ratable benefit of the Cash Flow Lenders) by the Non-Debtor Borrowers and their non-

Debtor affiliates party to or otherwise obligated under the Cash Flow Documents to secure

the Cash Flow Obligations are (i) valid, binding, perfected, enforceable, first priority (subject

to permitted exceptions under the Cash Flow Credit Agreement) liens on and security

interests in such Non-Debtor Borrowers' and non-Debtor affiliates' real and personal

property constituting Notes Priority Collateral (as defined in the ABL Intercreditor

Agreement and subject to Section 6.18 thereof), (ii) valid, binding, perfected, enforceable,

second priority (subject to permitted exceptions under the Cash Flow Credit Agreement)

liens on and security interests in such Non-Debtor Borrowers' and non-Debtor affiliates' real

and personal property constituting ABL Priority Collateral (as defined in the ABL

Intercreditor Agreement and subject to Section 6.18 thereof), (iii) not subject to avoidance,

recharacterization or subordination (except as set forth in the ABL Intercreditor Agreement

and the First Lien Intercreditor Agreement) pursuant to any applicable law and (iv) subject

and subordinate only to (A) the DIP Liens (as defined in paragraph 8 below) granted to

secure the DIP Loans, (B) prior to repayment in full of the Prepetition ABL Obligations, the

liens securing the Prepetition ABL Obligations with respect to the ABL Priority Collateral

(as defined in the ABL Intercreditor Agreement) and (C) other valid and unavoidable liens to

the extent such liens are senior to the liens securing the Cash Flow Obligations;

       (g)     as of the Petition Date, the Debtors party to or otherwise obligated

under the First Lien Documents were truly and justly indebted to the First Lien Noteholders,

without defense, counterclaim or offset  of any kind, in the aggregate principal amount of not

less than $1,100,000,000 in respect of loans and other extensions of credit made by the First

Lien Noteholders pursuant to the First Lien Documents, plus accrued and unpaid interest

thereon and fees and expenses (including fees and expenses of attorneys and advisors) as

provided in the First Lien Documents, plus all other amounts that would constitute

Obligations under and as defined in the First Lien Indenture (collectively, the "First Lien

Obligations"); provided that, as used in this Order, the term "First Lien Obligations" shall not

include any "make-whole" payment or other prepayment fees or premiums (unless and until

the Court determines that such amounts are "First Lien Obligations"), and the rights of the

Debtors, the First Lien Noteholders, and all other parties in interest regarding the extent, if

any, to which "First Lien Obligations" includes any "make-whole" payment or other

prepayment fees or premiums are hereby expressly reserved;

            (h)      the liens and security interests granted by the Debtors to the First Lien

Indenture Trustee (for the ratable benefit of the First Lien Noteholders) to secure the First

Lien Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to

permitted exceptions under the First Lien Indenture) liens on and security interests in the

Prepetition Collateral constituting Notes Priority Collateral (as defined in the ABL

Intercreditor Agreement), (ii) valid, binding, perfected, enforceable, second priority (subject

to permitted exceptions under the First Lien Indenture) liens on and security interests in the

Prepetition Collateral constituting ABL Priority Collateral (as defined in the ABL

Intercreditor Agreement), in each case of (i) and (ii), *pari passu* with the liens on such

collateral securing the Cash Flow Obligations, (iii) not subject to avoidance,

recharacterization or subordination (except as set forth in the ABL Intercreditor Agreement

and the First Lien Intercreditor Agreement) pursuant to the Bankruptcy Code or applicable

nonbankruptcy law and (iv) subject and subordinate only to (A) the Carve-Out and the liens

and security interests granted to secure the DIP Loans and the Adequate Protection

Obligations, (B) prior to repayment in full of the Prepetition ABL Obligations, the liens

securing the Prepetition ABL Obligations with respect to the ABL Priority Collateral and (C)

other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the

Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent

such liens are senior to the liens securing the First Lien Obligations;

(i)        as of the Petition Date, the Debtors party to or otherwise obligated

under the 1.5 Lien Documents were truly and justly indebted to the 1.5 Lien Noteholders,

without defense, counterclaim or offset of any kind, in the aggregate principal amount of not

less than $250 million in respect of loans and other extensions of credit made by the 1.5 Lien

Noteholders pursuant to the 1.5 Lien Documents, plus accrued and unpaid interest thereon

and fees and expenses (including fees and expenses of attorneys and advisors) as provided in

the 1.5 Lien Documents, plus all other outstanding amounts that would constitute Obligations

under and as defined in the 1.5 Lien Indenture (collectively, the "1.5 Lien Obligations");

provided that, as used in this Order, the term "1.5 Lien Obligations" shall not include any

"make-whole" payment or other prepayment fees or premiums (unless and until the Court

determines that such amounts are "1.5 Lien Obligations"), and the rights of the Debtors, the

1.5 Lien Noteholders and all other parties in interest regarding the extent, if any, to which

"1.5 Lien Obligations" includes any "make-whole" payment or other prepayment fees or

premiums are hereby expressly reserved;

(j)        the liens and security interests granted to the 1.5 Lien Indenture

Trustee (for the ratable benefit of the 1.5 Lien Noteholders) to secure the 1.5 Lien

Obligations are (i) valid, binding, perfected, enforceable, third priority (subject to permitted

exceptions under the 1.5 Lien Indenture) liens on and security interests in the Prepetition

Collateral, (ii) not subject to avoidance, recharacterization or subordination (except as set

forth in the 1.5 Lien Intercreditor Agreement (as defined in paragraph 4(p) below)) pursuant

to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) subject and subordinate

only to (A) the Carve-Out and the liens and security interests granted to secure the DIP Loans

and the Adequate Protection Obligations, (B) prior to repayment in full of the Prepetition

ABL Obligations, liens securing the  Prepetition ABL Obligations, (C) liens securing the

Cash Flow Obligations and the First Lien Obligations and (D) other valid and unavoidable

liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent

permitted by section 546(b) of the Bankruptcy Code to the extent such liens are senior to the

liens securing the 1.5 Lien Obligations;

       (k)     as of the Petition Date, the Debtors party to or otherwise obligated

under the Second Lien Documents (as defined below) were truly and justly indebted to the

Second Lien Noteholders, without defense, counterclaim or offset of any kind, in the

aggregate principal amount of not less than $1,344,000,000 in respect of loans and other

extensions of credit made by the Second Lien Noteholders pursuant to the Second Lien

Documents, plus accrued and unpaid interest thereon and fees and expenses (including fees

and expenses of attorneys and advisors) as provided in the Second Lien Documents, plus all

other outstanding amounts that would constitute Obligations under and as defined in the

Second Lien Notes Indenture (collectively, the "Second Lien Obligations"); provided that, as

used in this Order, the term "Second Lien Obligations" shall not include any "make-whole"

payment or other prepayment fees or premiums (unless and until the Court determines that

such amounts are "Second Lien Obligations"), and the rights of the Debtors, the Second Lien

Noteholders and all other parties in interest regarding the extent, if any, to which "Second

Lien Obligations" includes any "make-whole" payment or other prepayment fees or

premiums are hereby expressly reserved;

(l)        the liens and security interests granted to the Second Lien Indenture Trustee (for the ratable benefit of the Second Lien Noteholders) to secure the Second Lien Obligations are (i) valid, binding, perfected, enforceable, fourth priority (subject to permitted exceptions under the Second Lien Indenture) liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination (except as set forth in the Second Lien Intercreditor Agreement (as defined in paragraph 4(q) below)) pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) subject and subordinate only to (A) the Carve-Out and the liens and security interests granted to secure the DIP Loans and the Adequate Protection Obligations, (B) prior to repayment in full of the Prepetition ABL Obligations, liens securing the  Prepetition ABL Obligations, (C) liens securing the Cash Flow Obligations, the First Lien Obligations and the 1.5 Lien Obligations and (D) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are senior to the liens securing the Second Lien Obligations;

(m)        (i) no portion of the Prepetition ABL Obligations, the Cash Flow Obligations, the First Lien Obligations, the 1.5 Lien Obligations, or the Second Lien Obligations shall be subject to avoidance, recharacterization, recovery or, except as set forth in the Prepetition Intercreditor Agreements, subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) subject to (X) arguments with respect to the value of the Prepetition Collateral (other than with respect to the stipulation set forth in subparagraph (r) below), and (Y) any argument with respect to the applicability of any "make-whole" premium, each of which are expressly reserved by all parties, the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or

- 17 -

setoff rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law,

against any of the Prepetition Secured Parties and each of their respective affiliates,

subsidiaries, agents, officers, directors, employees, attorneys and advisors, each in their

capacity as such, in each case in connection with any matter related to the Prepetition ABL

Obligations, the Prepetition ABL Documents or the financing and transactions contemplated

thereby, the Cash Flow Obligations, the Cash Flow Documents or the financing and

transactions contemplated thereby, the First Lien Obligations, the First Lien Documents or

the financing and transactions contemplated thereby, the 1.5 Lien Obligations, the 1.5 Lien

Documents or the financing and transactions contemplated thereby, the Second Lien

Obligations, the Second Lien Documents or the financing and transactions contemplated

thereby or the Prepetition Collateral.

(n)     The Prepetition ABL Agent, the Cash Flow Agent, the First Lien

Indenture Trustee, Holdings and certain of Holdings' subsidiaries entered into the ABL

Intercreditor Agreement, dated as of April 14, 2013 (as amended, supplemented or otherwise

modified, the "ABL Intercreditor Agreement"), to set forth the relative lien priorities and

other rights and remedies of the Prepetition ABL Lenders, the Cash Flow Lenders and the

First Lien Noteholders with respect to, among other things, the Prepetition Collateral.

Pursuant to, and to the extent set forth in, the ABL Intercreditor Agreement, the Cash Flow

Lenders and First Lien Noteholders have agreed that (i) they will be deemed to have

consented and raise no objection to the Debtors' entry into and performance under the DIP

Documents or to the Debtors' use of the Cash Collateral (to the extent it constitutes "ABL

Priority Collateral" (as defined in the ABL Intercreditor Agreement)) on the terms provided

herein, (ii) they shall not object, contest, or support any other person objecting to or

contesting, any request by the Prepetition ABL Lenders for adequate protection or any adequate protection provided to the Prepetition ABL Lenders, and (iii) they will subordinate their liens on the Prepetition Collateral to the DIP Liens and Adequate Protection Liens as contemplated herein.

(o)     The Cash Flow Agent, the First Lien Indenture Trustee, Holdings and certain of Holdings' subsidiaries entered into that certain First Lien Intercreditor Agreement, dated as of November 26, 2012  (as amended, supplemented or otherwise modified, the "First Lien Intercreditor Agreement"), to set forth the relative lien priorities and other rights and remedies of the Cash Flow Lenders and the First Lien Noteholders with respect to, among other things, the Prepetition Collateral that constitutes Shared Collateral under and as defined in the First Lien Intercreditor Agreement.  Pursuant to, and to the extent set forth in, the First Lien Intercreditor Agreement, the First Lien Noteholders have agreed that (i) they will be deemed to have consented and raise no objection to the Debtors' entry into and performance under the DIP Documents or to the use of the Cash Collateral on the terms provided herein, (ii) they shall not object, contest, or support any other person objecting to or contesting, any request by the Cash Flow Lenders for adequate protection or any adequate protection provided to the Cash Flow Lenders, and (iii) they will subordinate their liens on the Prepetition Collateral that constitutes Shared Collateral under and as defined in the First Lien Intercreditor Agreement to the DIP Liens and Adequate Protection Liens as contemplated herein.

(p)     The First Lien Indenture Trustee, the 1.5 Lien Indenture Trustee, the Prepetition ABL Agent, the Cash Flow Agent, Holdings and certain of Holdings' subsidiaries entered into that certain Intercreditor Agreement, dated as of May 25, 2012 (as amended,

supplemented or otherwise modified, the "1.5 Lien Intercreditor Agreement"), to set forth the

relative lien priorities and other rights and remedies of the Prepetition ABL Lenders, the

Cash Flow Lenders, the First Lien Noteholders (collectively, the "First Lien Secured

Parties"), on the one hand, and the 1.5 Lien Noteholders, on the other hand, with respect to,

among other things, the Prepetition Collateral.  Pursuant to, and to the extent set forth in, the

1.5 Lien Intercreditor Agreement, the 1.5 Lien Indenture Trustee and the 1.5 Lien

Noteholders have agreed that (i) they will be deemed to have consented and raise no

objection to the Debtors' entry into and performance under the DIP Documents or to the use

of the Cash Collateral on the terms provided herein, (ii) they shall not object, contest, or

support any other person objecting to or contesting, any request by the First Lien Secured

Parties for adequate protection or any adequate protection provided to the First Lien Secured

Parties, and (iii) they will subordinate their liens on the Prepetition Collateral to the DIP

Liens and Adequate Protection Liens provided to the First Lien Secured Parties as

contemplated herein.

       (q)    The Second Lien Indenture Trustee, the First Lien Indenture Trustee,

the 1.5 Lien Indenture Trustee, the Prepetition ABL Agent, the Cash Flow Agent, Holdings

and certain of Holdings' subsidiaries entered into that certain Intercreditor Agreement, dated

as of November 16, 2012 (as amended, supplemented or otherwise modified, the "Second

Lien Intercreditor Agreement", together with the ABL Intercreditor Agreement, the First

Lien Intercreditor Agreement, and the 1.5 Lien Intercreditor Agreement, the "Prepetition

Intercreditor Agreements"), to set forth the relative lien priorities and other rights and

remedies of the First Lien Secured Parties and the 1.5 Lien Noteholders, on the one hand, and

the Second Lien Noteholders, on the other hand, with respect to, among other things, the

Prepetition Collateral.  Pursuant to, and to the extent set forth in, the Second Lien

Intercreditor Agreement, the Second Lien Indenture Trustee and the Second Lien

Noteholders have agreed that (i) they will be deemed to have consented and raise no

objection to the Debtors' entry into and performance under the DIP Documents or to the use

of the Cash Collateral on the terms provided herein, (ii) they shall not object, contest, or

support any other person objecting to or contesting, any request by the First Lien Secured

Parties and the 1.5 Lien Noteholders for adequate protection or any adequate protection

provided to the First Lien Secured Parties and the 1.5 Lien Noteholders, and (iii) they will

subordinate their liens on the Prepetition Collateral to the DIP Liens and Adequate Protection

Liens provided to the First Lien Secured Parties and 1.5 Lien Noteholders as contemplated

herein.

(r)     Prior to the repayment in full of the Prepetition ABL Obligations, the

aggregate value of the Prepetition Collateral securing the Prepetition ABL Obligations

substantially exceeded the aggregate amount of the Prepetition ABL Obligations.

5.     *Findings Regarding the DIP Loans.*

(a)     Good cause has been shown for the entry of this Order.

(b)     The Debtors require the remainder of the DIP Loans and need to

continue to use the Prepetition Collateral, including the Cash Collateral, in order to, among

other things, permit the orderly continuation of their businesses, preserve the going concern

value of the Debtors and their non-Debtor affiliates, make payroll and satisfy other working

capital and general corporate purposes of the Debtors (including costs related to the Cases) In

accordance with the terms of the ABL Intercreditor Agreement, the DIP ABL Facility shall

constitute an "ABL Facility" as defined in, and for all purposes under, the ABL Intercreditor

Agreement.

(c)     The Debtors are unable to obtain financing on more favorable terms

from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the

DIP Documents and are unable to obtain adequate unsecured credit allowable under section

503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable

to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the

Bankruptcy Code without granting priming liens under section 364(d)(1) of the Bankruptcy

Code and the Superpriority Claims (as defined in paragraph 7(a) below) and repaying in full

the Prepetition ABL Obligations, in each case on the terms and conditions set forth in this

Order, the Interim Order, and the DIP Documents.

(d)     The terms of the DIP Loans and the use of the Prepetition Collateral

(including the Cash Collateral) pursuant to this Order are fair and reasonable, reflect the

Debtors' exercise of prudent business judgment consistent with their fiduciary duties and

constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of the Prepetition Collateral

(including the Cash Collateral) have been the subject of extensive negotiations conducted in

good faith and at arm's length among the Debtors, the DIP Agents, the DIP Lenders, the DIP

Arrangers, and the other Prepetition Secured Parties (other than the First Lien Indenture

Trustee, First Lien Noteholders, 1.5 Lien Indenture Trustee and 1.5 Lien Noteholders), and

all of the Debtors' obligations and indebtedness arising under or in connection with (i) the

DIP ABL Documents, any permitted hedging or cash management agreements to which any

Debtor and any DIP ABL Lender are party, this Order and the DIP ABL Loans (collectively,

the "DIP ABL Obligations") and (ii) the DIP Term Loan Documents, any permitted hedging

or cash management agreements to which any Debtor and any DIP Term Loan Lender are

party, this Order and the DIP Term Loans (collectively, the "DIP Term Loan Obligations",

and together with the DIP ABL Obligations, the "DIP Obligations") shall be deemed to have

been extended by the applicable DIP Agents and DIP Lenders in "good faith" as such term is

used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections

set forth therein, and shall be entitled to the full protection of section 364(e) of the

Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or

modified on appeal or otherwise.

(f)        Absent granting the final relief set forth in this Order, the Debtors'

estates and their business operations will be immediately and irreparably harmed.  The

borrowing of the DIP Loans and the use of the Prepetition Collateral (including the Cash

Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best

interest of the Debtors' estates.

6.        *Authorization of the DIP Loans and the DIP Documents.*

(a)        The Debtors are hereby authorized (i) to continue to perform under the

DIP Documents and, (ii) in the case of the U.S. Borrower, to borrow the remainder of the

DIP ABL Loans under the DIP ABL Agreement (including issuance of letters of credit).  The

proceeds of the DIP Loans shall be used for, subject to the terms of the DIP Documents,

working capital and other general corporate purposes of the Debtors (including costs related

to the Cases), including without limitation, to pay interest, fees and expenses in connection

with the DIP Loans and the Adequate Protection Obligations (to the extent such acts were

authorized by the Interim Order and have already occurred, such acts are hereby ratified).

(b)     The DIP ABL Facility may, without any further approval of this Court, at the option of the DIP ABL Borrowers, and with no obligations or commitments on the part of the then existing DIP ABL Lenders, be increased pursuant to the terms of, and subject to the conditions set forth in, the DIP ABL Agreement. The DIP Term Loan Facility may, without any further approval of this Court, at the option of the DIP Term Loan Borrower, and with no obligations or commitments on the part of the then existing DIP Term Loan Lenders, be increased pursuant to the terms of, and subject to the conditions set forth in, the DIP Term Loan Agreement.  Except as may be authorized by further order of the Court, the DIP ABL Facility and the DIP Term Loan Facility shall not be increased by more than $100,000,000 in the aggregate.

(c)     Upon the closing of the DIP ABL Facility, all Prepetition Letters of Credit were deemed letters of credit issued and outstanding under the DIP ABL Facility.

(d)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and empowered to perform all acts and to execute and deliver all instruments and documents that each of the DIP Agents determines to be reasonably required or necessary for the Debtors' performance of their obligations under the applicable DIP Documents (to the extent such acts, execution, and delivery were authorized by the Interim Order and have already occurred, such acts are hereby ratified), including without limitation:

(i)      the execution, delivery and performance of the DIP Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in accordance with the terms of the applicable DIP

Documents and in such form as the Debtors, the applicable DIP Agent and the applicable DIP Lenders may agree, and no further approval of this Court shall be required for any amendment, waiver, consent or other modification to and under the DIP Documents (and any fees paid in connection therewith) that do not materially and adversely affect the Debtors or which do not (A) shorten the maturity of the DIP Loans, (B) increase the principal amount of, or the rate of interest payable on, the DIP Loans (other than pursuant to any incremental facility permitted by the DIP Documents, the incurrence of which shall not require any further approval from the Court, subject to the borrowing limits set forth in this Order and subject to the advance filing requirement set forth in the immediately following proviso applicable to any amendment, waiver, consent or other modification), or (C) change any Event of Default, add any covenants or amend the covenants therein, in any such case to be materially more restrictive; provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee, counsel to the Prepetition Agents, counsel to Apollo, counsel to the First Lien Indenture Trustee, counsel to the 1.5 Lien Indenture Trustee, counsel to the Second Lien Indenture Trustee, counsel to the Ad Hoc Committee of Second Lien Noteholders and counsel to the Committee two business days in advance of its effectiveness;

(iii)    the non-refundable payment to the DIP Agents, the DIP Arrangers and the DIP Lenders, as the case may be, of the commitment, underwriting, arranger and administrative agency fees set forth in the applicable DIP

Documents as described in the Motion and/or referred to in one or more

commitment and fee letters executed among the Debtors and the respective DIP

Agents and/or DIP Arrangers (collectively, the "Commitment/Fee Letters"); and

      (iv)    the performance of all other acts required under or in connection

with the DIP Documents.

      (e)    Each Debtor is authorized and directed to perform its respective

obligations under the applicable Commitment/Fee Letters, including in connection with the

commitment by the DIP Arrangers to provide up to $1,000,000,000 of proposed exit

financing facilities on the terms, and subject to the conditions, set forth in the applicable

Commitment/Fee Letters.

      (f)    The DIP Documents constitute valid and binding obligations of the

Debtors, enforceable against the Debtors in accordance with the terms of this Order and the

DIP Documents.  No obligation, payment, transfer or grant of security by the Debtors under

the DIP Documents, the Interim Order, or this Order shall be voidable, avoidable or

recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law

(including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under

any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act

or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or

counterclaim.

      (g)    If this Court enters an order terminating or reducing the period

pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the

exclusive right to file a plan of reorganization and solicit acceptances thereof because the

Approved Plan of Reorganization (as defined in the DIP Credit Agreements) is a "new value

plan", such termination or reduction shall not constitute an Event of Default under either section 7.01(m)(vi)(e) of the DIP ABL Agreement or section 7.01(m).F.(e) of the DIP Term Loan Agreement.

7.      *Superpriority Claims*.

(a)      Except to the extent expressly set forth in this Order in respect of the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  The Superpriority Claims arising from the DIP ABL Obligations shall be *pari passu* with the Superpriority Claims arising from the DIP Term Obligations, subject to the terms of the DIP Intercreditor Agreement (as defined in paragraph 8(e) below).

(b)      For purposes hereof, the "Carve-Out" shall mean (i) any fees payable to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, and any interest on such fees payable pursuant to section 3717 of title 31 of the United States Code, (ii) the reasonable fees and expenses up to $200,000 incurred by a trustee appointed in the Debtors' cases under section 726(b) of the Bankruptcy Code (irrespective of whether the Carve Out Notice (as defined below) has been

delivered) and (iii) up to $3,000,000 of allowed fees, expenses and disbursements of

professionals retained by order of this Court, incurred after the occurrence of a Carve-Out

Event (defined in this paragraph 7(b) below) plus all unpaid professional fees, expenses and

disbursements allowed by this Court that were incurred prior to the occurrence of a Carve-

Out Event (regardless of when such fees, expenses and disbursements become allowed by

order of this Court).  For the purposes hereof, a "Carve-Out Event" shall occur upon the

occurrence and during the continuance of an Event of Default under either DIP Credit

Agreement (i) written notice of which has been by given by either of the DIP Agents to the

Debtors or (ii) in respect of which the DIP ABL Borrowers or DIP Term Loan Borrower

have knowledge and fail to provide notice to the applicable DIP Agent within five (5)

business days of obtaining such knowledge; provided that, no Carve-Out Event shall be

deemed to have occurred for purposes of this Order if any such Event of Default is

subsequently waived by the DIP Agents.  So long as no Carve-Out Event shall have occurred

and be continuing, the Carve-Out shall not be reduced by the payment of fees, expenses and

disbursements of professionals retained by order of this Court allowed by this Court and

payable under Sections 328, 330 and 331 of the Bankruptcy Code.  Upon the occurrence of a

Carve-Out Event, the right of the Debtors to pay professional fees incurred under clause (iii)

above without reduction of the Carve-Out in such clause (iii) shall terminate (unless the

underlying Event of Default giving rise to the Carve-Out Event is subsequently waived by

the DIP Agents) and upon the occurrence of the Carve-Out Event, the Debtors shall provide

immediate notice by facsimile and email to all retained professionals informing them that a

Carve-Out Event has occurred and that the Debtors' ability to pay professionals is subject to

the Carve-Out; provided that (A) the Carve-Out shall not be available to pay any professional

fees and expenses incurred in connection with the initiation or prosecution of any claims,

causes of action, adversary proceedings or other litigation against the DIP Agents, the DIP

Lenders or any Prepetition Secured Party and (B) nothing in this Order shall impair the right

of any party to object to the reasonableness of any such fees or expenses to be paid by the

Debtors' estates.

8.      *DIP Liens*.  As a result of the amendment and restatement of the Prepetition ABL

Agreement, which became the DIP ABL Agreement on the DIP Closing Date (as defined in the

DIP ABL Agreement), the security interests and liens granted pursuant to the Prepetition ABL

Documents to secure the Prepetition ABL Obligations were reaffirmed pursuant to the DIP

Documents, and all of such reaffirmed security interests and liens granted by the Debtors were

deemed to be included among the DIP Liens (as defined below) on the DIP Closing Date granted

pursuant to the Interim Order to secure the DIP ABL Obligations.  In addition, as security for the

DIP Obligations, effective and perfected as of the date of the Interim Order and without the

necessity of the execution by the Debtors (or recordation or other filing) of security agreements,

control agreements, pledge agreements, financing statements, mortgages or other similar

documents, or the possession or control by the DIP Agents of any property, the following

security interests and liens are hereby granted by the Debtors to each DIP Agent, for itself and

the respective benefit of the applicable DIP Lenders (all property of the Debtors identified in

clauses (a), (b) and (c) of this paragraph 8 being collectively referred to as the "DIP Collateral"),

subject and subordinate to the Carve-Out (all such liens and security interests granted to the DIP

Agents pursuant to this Order, the "DIP Liens")[5] and having the priorities set forth in this

paragraph 8:

> (a)    First Lien on Unencumbered Property.  Pursuant to section 364(c)(2)

of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first

priority lien on, and security interest in, all tangible and intangible prepetition and

postpetition property of the Debtors, whether existing on or as of the Petition Date or

thereafter acquired, that is not subject to either (i) valid, perfected, non-avoidable and

enforceable liens or security interests, including consignment arrangements under the

Uniform Commercial Code, in existence on or as of the Petition Date, or (ii) valid liens or

security interests, including consignment arrangements under the Uniform Commercial

Code, perfected subsequent to the Petition Date as permitted by section 546(b) of the

Bankruptcy Code (collectively, the "Unencumbered Property");[6] provided that,

notwithstanding anything to the contrary in the DIP Documents, the Unencumbered Property

shall not include, and no DIP Liens, Adequate Protection Liens or any other liens shall be

---

[5]  The term "DIP Liens" is defined by reference only to liens and security interests granted to the DIP Agents pursuant to this Order on assets and property of the Debtors, and therefore, no DIP Liens are granted pursuant to this Order on any assets or property of any Non-Debtor Borrower or any non-Debtor affiliate of any Debtor.

[6]  Notwithstanding anything contained herein or in the DIP Documents to the contrary, the Debtors shall not pledge to the DIP Agents (a) in excess of 65% of the voting capital stock of their direct foreign subsidiaries (other than the pledge of an additional 35% of the stock of certain foreign subsidiaries to the extent set forth in the First-Tier Subsidiary Pledge Agreement (as defined in the DIP ABL Agreement) in respect of the obligations of Non-Debtor Borrowers) or any of the capital stock or equity interests in indirect foreign subsidiaries, or (b) (i) the note issued by Momentive Performance Materials Japan LLC to Juniper Bond Holdings I LLC in an original principal amount of $210,000,000, (ii) the note issued by Momentive Performance Materials Japan LLC to Juniper Bond Holdings II LLC in an original principal amount of $210,000,000, (iii) the note issued by Momentive Performance Materials Japan LLC to Juniper Bond Holdings III LLC in an original principal amount of $210,000,000 and (iv) the note issued by Momentive Performance Materials Japan LLC to Juniper Bond Holdings IV LLC in an original principal amount of $210,000,000.

granted on any Avoidance Actions but shall include any proceeds or property recovered in respect of any Avoidance Actions.

(b)     Liens Junior to Certain Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors (other than the property described in paragraph 8(c) below, as to which the DIP Liens will have the priority as described in such clause), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens or security interests in existence immediately prior to the Petition Date or to valid and unavoidable liens or security interests in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Non-Primed Liens"), which security interests and liens in favor of the DIP Agents and the DIP Lenders shall be junior to the Non-Primed Liens.

(c)     Liens Priming the Liens of the Prepetition Secured Parties.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral.  The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of each of the Prepetition Secured Parties (including the applicable Adequate Protection Liens granted to such Prepetition Secured Party), but shall be junior to any Non-Primed Liens on the Prepetition Collateral.

(d)     Liens Senior to Certain Other Liens.  No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agents shall be granted or allowed while any portion of the DIP Obligations remain outstanding, and the DIP Liens

shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and

preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy

Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari*

*passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy

Code or otherwise.

(e)    <u>Priority of the DIP Liens</u>.  The DIP Liens granted to the DIP Term

Loan Agent shall be immediately junior in priority and subject to the DIP Liens granted to

the DIP ABL Agent in respect of the ABL DIP Collateral (as defined below), and the DIP

Liens granted to the DIP ABL Agent shall be immediately junior in priority and subject to

the DIP Liens granted to the DIP Term Loan Agent in respect of the Term Loan DIP

Collateral (as defined below); <u>provided</u> that, the DIP Liens granted to the DIP Term Loan

Agent and the DIP ABL Agent on the proceeds of Avoidance Actions shall be *pari passu* and

any such proceed shall be shared in accordance with the terms of the DIP Intercreditor

Agreement. The "<u>ABL DIP Collateral</u>" shall consist of all the Debtors' accounts receivables,

loan receivables, inventory, related books and records, cash and the proceeds of the

foregoing, all as further set forth in the DIP Intercreditor Agreement.  The "<u>Term Loan DIP</u>

<u>Collateral</u>" shall consist of all DIP Collateral except the ABL DIP Collateral, including

without limitation, all of the Debtors' intellectual property, equity interests (limited to 65%

of the equity interests in a foreign subsidiary), fixtures and equipment (which are not part of

the ABL DIP Collateral), all general intangibles and books and records (other than those

which are or are related to the ABL DIP Collateral), all intercompany indebtedness and all

proceeds of the foregoing, all as further set forth in the DIP Intercreditor Agreement.  In

furtherance of the foregoing priority, the DIP Liens granted herein to the DIP ABL Agent

and the DIP Term Loan Agent shall be governed by the DIP Financing Intercreditor Agreement, dated April 15, 2014 (as amended, supplemented or otherwise modified, the "DIP Intercreditor Agreement"), among the DIP ABL Agent, the DIP Term Loan Agent and each of the Debtors.

9.      *Remedies After Event of Default.*  The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agents and the DIP Lenders to exercise, (a) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the applicable DIP Documents, other than those rights and remedies against the applicable DIP Collateral as provided in clause (b) below, and (b) upon the occurrence and during the continuance of an Event of Default, and the giving of seven (7) days' prior written notice to the Debtors (with a copy to counsel to the Debtors, counsel to the Prepetition Agents, counsel to Apollo, counsel to the First Lien Indenture Trustee, counsel to the 1.5 Lien Indenture Trustee, counsel to the Second Lien Indenture Trustee, counsel to the Ad Hoc Committee of Second Lien Noteholders and counsel to the Committee and the U.S. Trustee), all rights and remedies against the DIP Collateral provided for in the applicable DIP Documents and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agents or any DIP Lender); provided that, during the foregoing seven (7) day period the only issue that may be raised by any party in opposition to the exercise of rights and remedies shall be whether an Event of Default has in fact occurred and is continuing, and other than as set forth in the prior clause of this proviso, the Debtors hereby waive their right to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit or restrict, or delay the exercise or benefit of, the rights and remedies of the DIP Agents and the DIP Lenders under the DIP Documents or this

Order; provided further that, the respective rights and remedies available to a DIP Agent with

respect to the DIP Collateral shall be governed by the DIP Intercreditor Agreement.  In

connection with the exercise of their respective rights and remedies, in no event shall the DIP

Agents or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar

doctrine with respect to the DIP Collateral.  In no event shall the Prepetition Secured Parties be

subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP

Collateral or the Prepetition Collateral.  Notwithstanding anything to the contrary contained in

this Order, the Avoidance Actions and any proceeds or property recovered in respect of any

Avoidance Actions shall only be used to pay or otherwise satisfy any Adequate Protection Liens,

DIP Liens, Superpriority Claims or any 507(b) Claims to the extent necessary after commercially

reasonable efforts have been undertaken by the DIP Agents and the Prepetition Secured Parties,

as applicable, to pay or otherwise satisfy any Adequate Protection Liens, DIP Liens,

Superpriority Claims or any 507(b) Claims from the other DIP Collateral. Either DIP Agent's or

any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or

this Order shall not constitute a waiver of such DIP Agent's or any DIP Lender's rights

hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument

executed in accordance with the terms of the applicable DIP Credit Agreement.  No restrictions

on the exercise of remedies provided for in this Order shall apply to any exercise of remedies by

the DIP ABL Agent, the DIP ABL Lenders, the Prepetition Agents or Prepetition Secured Parties

against the Non-Debtor Borrowers or any other non-Debtors or their respective assets, and

nothing in this Order shall be interpreted to extend the automatic stay or any other protections to

the Non-Debtor Borrowers or any other non-Debtors or their respective assets.

10.    *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral, as the case may be, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agents or the Prepetition Agents, as the case may be, and no such consent shall be implied from any other action or inaction by the DIP Agents, the DIP Lenders or the Prepetition Secured Parties.

11.    *Limitations under Section 552(b) of the Bankruptcy Code*.  The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code; <u>provided</u> however, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Secured Parties with respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral, in each case solely to the extent necessary to satisfy any Adequate Protection Obligations or 507(b) Claims (without waiving any parties' rights with respect to the applicability of the exception (except as provided above) or further request for a waiver thereof).

12.    *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Agents on behalf of the DIP Lenders or (except as provided in paragraph 26 of this Order) to the Prepetition Secured Parties pursuant to the provisions of the Interim Order or this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

13.    *Prepetition ABL Obligations.*  (a) Subject to the provisions of paragraph 13(b), the Prepetition ABL Obligations were paid in full (including all amounts that would constitute "Obligations" under and as defined in the Prepetition Credit Agreement) by the Debtors from the proceeds of the initial borrowing of the DIP Loans and, upon such payment, the commitments of all Prepetition ABL Lenders (other than the DIP Arrangers) under the Prepetition ABL Agreement were terminated, and the commitments thereunder of the DIP Arrangers on the DIP Closing Date were increased to $270,000,000 as commitments under the DIP ABL Agreement. Upon such repayment in full of the Prepetition ABL Obligations,  all security interests in, and liens on, Prepetition Collateral granted to secure the Prepetition ABL Obligations were, without the necessity of further action, deemed to be included among the DIP Liens granted pursuant to the Orders to secure the DIP ABL Obligations.  Upon the closing of the DIP ABL Facility, the Prepetition Letters of Credit were deemed issued and outstanding under the DIP ABL Facility, and neither the Prepetition ABL Agent nor any Prepetition ABL Lender shall have any further obligations or liabilities with respect to such Prepetition Letters of Credit to either the Debtors or the beneficiaries thereof.

(b)    *Adequate Protection for the Prepetition ABL Agent and Prepetition ABL Lenders*.  Notwithstanding the payment of the Prepetition ABL Obligations in full by the Debtors from the proceeds of the initial borrowing of the DIP Loans, until such time as the events and conditions applicable to the Prepetition ABL Obligations, the Prepetition ABL Agent and the Prepetition ABL Lenders described in clauses (x), (y) and (z) of the third sentence of paragraph 26 shall have occurred, the Prepetition ABL Agent and the Prepetition ABL Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their valid, perfected and enforceable interests in

the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate

diminution in value of their interests in the Prepetition Collateral (in each case in respect of

their indemnification and reimbursement claims under Section 9.05 of the Prepetition ABL

Agreement), including without limitation, any such diminution resulting from the sale, lease

or use by the Debtors (or other decline in value) of the Cash Collateral and any other

Prepetition Collateral, the priming of the Prepetition ABL Agent's liens on the Prepetition

Collateral by the DIP Liens and the imposition of the automatic stay pursuant to section 362

of the Bankruptcy Code (such diminution in value, the "Prepetition ABL Adequate

Protection Obligations").  As adequate protection, the Prepetition ABL Agent and the

Prepetition ABL Lenders are hereby granted the following:

(i)    Fees and Expenses.   The Debtors shall pay all reasonable fees and

expenses of the Prepetition ABL Agent and Prepetition ABL Lenders payable

under Section 9.05 of the Prepetition ABL Agreement (including, without

limitation, reasonable fees and disbursements of counsel and financial advisors to

the Prepetition ABL Agent) incurred in connection with (A) the Final Hearing,

(B) the enforcement by the Prepetition ABL Agent and Prepetition ABL Lenders

of the rights, benefits and privileges granted in the Interim Order or this Order in

favor of the Prepetition ABL Agent and Prepetition ABL Lenders and (C) any

discovery or litigation in connection with any pending or threatened "Claims and

Defenses" (as defined in paragraph 26 hereof) which shall have been raised or

asserted against the Prepetition ABL Lenders, Prepetition ABL Agent or the

Prepetition ABL Obligations, until the resolution thereof by a final, non-

appealable order.  None of the fees and expenses payable pursuant to this

paragraph 13(b) shall be subject to separate approval by this Court (but the U.S.

Trustee, the Debtors and the Committee may object to the reasonableness, as such

standard is used in section 506(b) of the Bankruptcy Code, of such fees and

expenses and this Court shall resolve any dispute as to the reasonableness of any

such fees and expenses), and no recipient of any such payment shall be required

to file any interim or final fee application with respect thereto.  The Debtors shall

pay the fees and expenses provided for in this paragraph 13(b) promptly after

receipt of monthly invoices therefor (redacted to protect privileges), and the

Prepetition ABL Agent shall promptly provide copies of such invoices (redacted

to protect privileges) to the counsel to the Committee and to the U.S. Trustee.

The Debtors' obligation to pay such fees and expenses shall constitute

superpriority claims as provided in section 507(b) of the Bankruptcy Code (the

"Prepetition ABL 507(b) Claims"), with priority in payment over any and all

administrative expenses of the kinds specified or ordered pursuant to any

provision of the Bankruptcy Code, including without limitation, sections 326,

328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i)

the Carve-Out and (ii) the Superpriority Claims granted in respect of the DIP

Obligations.

(c)      Nothing in this Order or the DIP Documents shall prejudice the rights,

remedies and privileges of the Prepetition ABL Agent and the Prepetition ABL Lenders

granted in the Bankruptcy Code or as set forth in the Prepetition ABL Documents to the

extent the Prepetition ABL Obligations are, after repayment, required to be disgorged or

otherwise avoided or reinstated, and all of the Prepetition ABL Agent's and Prepetition ABL

- 38 -

Lenders' rights and remedies under the Bankruptcy Code and the Prepetition ABL

Documents (including the Prepetition Intercreditor Agreements) are hereby fully preserved,

including their right to seek additional or further adequate protection.

14.     *The Cash Collateral.*  Without prejudice to the rights of any other party (but

subject to the limitations thereon contained in paragraphs 26 and 27), the Debtors, for themselves

and not their estates, and subject to paragraph 26 hereof, admit, stipulate, and agree that

substantially all of the Debtors' cash, including without limitation, all cash and other amounts on

deposit or maintained by the Debtors in any account or accounts with any Prepetition Secured

Party and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds

of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Secured Parties

(subject in all cases to the Prepetition Intercreditor Agreements), within the meaning of section

363(a) of the Bankruptcy Code (the "Cash Collateral").

15.     *Use of Prepetition Collateral (Including Cash Collateral).*  The Debtors are

hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the

period from the Petition Date through and including the Termination Date (as defined below) for

working capital and general corporate purposes (including costs related to the Cases) in

accordance with the terms and conditions of this Order; provided that, (a) the Prepetition Secured

Parties are granted adequate protection as set forth herein and (b) except on the terms of this

Order, the Debtors are not authorized to use the Cash Collateral.  By virtue of the Cash Flow

Agent's and Prepetition ABL Agent's consent to the Debtors' use of Cash Collateral as set forth

in the Orders, pursuant and subject to the Prepetition Intercreditor Agreements, the First Lien

Noteholders, the 1.5 Lien Noteholders and the Second Lien Noteholders are deemed to have

consented such use of the Cash Collateral.  As used herein, "Termination Date" means the

earlier to occur of (a) the Maturity Date (as defined in the applicable DIP Credit Agreement) of

either the DIP Term Facility or the DIP ABL Facility and (b) the acceleration of any DIP Loans

and the termination of any Commitments (as defined in the DIP Credit Agreements) in

accordance with the terms of the applicable DIP Credit Agreement.

16.     *Adequate Protection for the Cash Flow Agent and Cash Flow Lenders.*  The Cash

Flow Agent and the Cash Flow Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e)

and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition

Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value

of their valid, perfected and enforceable interests in the Prepetition Collateral, including without

limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other

decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming of the

Cash Flow Agent's liens on the Prepetition Collateral by the DIP Liens and the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the

"Cash Flow Adequate Protection Obligations").  As adequate protection, the Cash Flow Agent

and the Cash Flow Lenders are hereby granted the following:

(a)     Cash Flow Adequate Protection Liens.  As security for the payment of

the Cash Flow Adequate Protection Obligations, the Cash Flow Agent (for itself and for the

benefit of the Cash Flow Lenders) is hereby granted (effective and perfected as of the date of

the Interim Order and without the necessity of the execution by the Debtors of security

agreements, pledge agreements, mortgages, financing statements or other agreements) a

valid, perfected replacement security interest in and lien on all of the DIP Collateral (the

"Cash Flow Adequate Protection Liens"), subject and subordinate only to (i) the DIP Liens,

(ii) the Carve-Out, and (iii) the Non-Primed Liens, and subject further to the terms of the

First Lien Intercreditor Agreement.

(b)    <u>Cash Flow Section 507(b) Claims</u>.    The Cash Flow Adequate

Protection Obligations shall constitute superpriority claims as provided in section 507(b) of

the Bankruptcy Code (the "<u>Cash Flow 507(b) Claims</u>"), with priority in payment over any

and all administrative expenses of the kinds specified or ordered pursuant to any provision of

the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of

the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out and (ii) the

Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent

expressly set forth in this Order, the Cash Flow Agent and the Cash Flow Lenders shall not

receive or retain any payments, property or other amounts in respect of the Cash Flow 507(b)

Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash

and the Carve-Out amount is funded.  Notwithstanding their status as Cash Flow 507(b)

Claims, the Cash Flow Adequate Protection Obligations may be satisfied in a plan of

reorganization confirmed in the Cases in the manner set forth in such plan if holders of more

than 66% (by amount) of the Cash Flow Adequate Protection Obligations consent to such

treatment.

(c)    <u>Interest, Fees and Expenses</u>.  The Debtors are authorized and directed

to pay as adequate protection to the Cash Flow Agent all accrued and unpaid interest

(including interest accrued prior to the Petition Date) on the loans constituting Cash Flow

Obligations at the applicable non-default rate set forth in the Cash Flow Documents, and to

pay all other accrued and unpaid fees and disbursements owing to the Cash Flow Agent

under the Cash Flow Documents, as and when such interest, fees and disbursements become

due and payable (but for the commencement of the Cases) in accordance with the terms of

the Cash Flow Documents (which payments and pricing shall be without prejudice to the

rights of the Cash Flow Agent or Cash Flow Lenders to assert a claim for the payment of

additional interest calculated at any other rates applicable pursuant to the Cash Flow Credit

Agreement, and without prejudice to the rights of the Debtors or other party in interest to

contest any such additional claims), in each case subject to Section 506(b) of the Bankruptcy

Code. As additional adequate protection, the Debtors shall also pay to the Cash Flow Agent

and any Cash Flow Lenders as of the Petition Date all reasonable fees and expenses of

counsel and financial advisors payable to the Cash Flow Agent and such Cash Flow Lenders

under the Cash Flow Documents. None of the fees and expenses payable pursuant to this

paragraph 16(c) shall be subject to separate approval by this Court (but the U.S. Trustee, the

Debtors and the Committee may object to the reasonableness, as such standard is used in

section 506(b) of the Bankruptcy Code, of such fees and expenses and the Court shall resolve

any dispute as to the reasonableness of any such fees and expenses), and no recipient of any

such payment shall be required to file any interim or final fee application with respect

thereto. The Debtors shall pay the professional fees and expenses provided for in this

paragraph 16(c) promptly after receipt of monthly invoices therefor (redacted to protect

privileges), and the Cash Flow Agent and such Cash Flow Lenders shall promptly provide

copies of such invoices (redacted to protect privileges) to the counsel to the Committee and

to the U.S. Trustee.

17.    *Reservation of Rights of the Cash Flow Lenders*. The Cash Flow Agent and Cash

Flow Lenders consent to the adequate protection provided herein. Notwithstanding any other

provision hereof, but subject to the terms of the Prepetition Intercreditor Agreements, the grant

of adequate protection to the Cash Flow Agent and Cash Flow Lenders pursuant to the terms of

this Order is without prejudice to the right of the Cash Flow Agent and Cash Flow Lenders to

seek modification of the grant of adequate protection provided hereby so as to provide different

or additional adequate protection, and without prejudice to the right of the Debtors or any other

party in interest (subject to the terms of the Prepetition Intercreditor Agreements) to contest any

such modification.

18.     *Adequate Protection for the First Lien Indenture Trustee and First Lien*

*Noteholders*.  The First Lien Indenture Trustee and the First Lien Noteholders are entitled,

pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate

protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an

amount equal to the aggregate diminution in value of their, valid, perfected and enforceable

interests in the Prepetition Collateral, including, without limitation, any such diminution

resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash

Collateral and any other Prepetition Collateral, the priming of the First Lien Indenture Trustee's

liens on the Prepetition Collateral by the DIP Liens and the imposition of the automatic stay

pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "First Lien

Adequate Protection Obligations").  As adequate protection, the First Lien Indenture Trustee and

the First Lien Noteholders are hereby granted the following:

(a)     First Lien Adequate Protection Liens.  As security for the payment of

the First Lien Adequate Protection Obligations, the First Lien Indenture Trustee (for itself

and for the benefit of the First Lien Noteholders) is hereby granted (effective and perfected

as of the date of the Interim Order and without the necessity of the execution by the Debtors

of security agreements, pledge agreements, mortgages, financing statements or other

- 43 -

agreements) a valid, perfected replacement security interest in and lien on all of the DIP

Collateral (the "First Lien Adequate Protection Liens"), subject and subordinate only to (i)

the DIP Liens, (ii) the Carve-Out, and (iii) the Non-Primed Liens, and subject further to the

terms of the First Lien Intercreditor Agreement.

(b)    First Lien Section 507(b) Claims.   Subject to the terms of the First

Lien Intercreditor Agreement, the First Lien Adequate Protection Obligations shall constitute

superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "First Lien

507(b) Claims"), with priority in payment over any and all administrative expenses of the

kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including

without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and

subordinate only to (i) the Carve-Out and (ii) the Superpriority Claims granted in respect of

the DIP Obligations.  Except to the extent expressly set forth in this Order, the First Lien

Indenture Trustee and the First Lien Noteholders shall not receive or retain any payments,

property or other amounts in respect of the First Lien 507(b) Claims unless and until all DIP

Obligations shall have indefeasibly been paid in full in cash and the Carve-Out amount is

funded.  Notwithstanding their status as First Lien 507(b) Claims, the First Lien Adequate

Protection Obligations may be satisfied in a plan of reorganization confirmed in the Cases in

the manner set forth in such plan if holders of more than 66% (by amount) of the First Lien

Adequate Protection Obligations consent to such treatment.

(c)    Interest, Fees and Expenses.  The Debtors are authorized and directed

to pay as adequate protection to the First Lien Indenture Trustee all accrued and unpaid

interest (including interest accrued prior to the Petition Date) on the loans constituting First

Lien Obligations at the applicable non-default rate set forth in the First Lien Documents, and

to pay all other accrued and unpaid fees and disbursements owing to the First Lien Indenture

Trustee under the First Lien Documents, as and when such interest, fees and disbursements

become due and payable (but for the commencement of the Cases) in accordance with the

terms of the First Lien Documents (which payments and pricing shall be without prejudice to

the rights of the First Lien Indenture Trustee or First Lien Noteholders to assert a claim for

the payment of additional interest calculated at any other rates applicable pursuant to the First

Lien Indenture, and without prejudice to the rights of the Debtors or other party in interest to

contest any such additional claims), in each case subject to Section 506(b) of the Bankruptcy

Code.  As additional adequate protection, the Debtors shall also pay to the First Lien

Indenture Trustee all reasonable fees and expenses of counsel and financial advisors to such

counsel (in the form of two monthly payments of $150,000 per month in respect of such

financial advisors) payable to the First Lien Indenture Trustee under the First Lien

Documents (provided that (i) the Debtors shall not be required to pay as adequate protection

any fees and expenses of counsel to the First Lien Indenture Trustee related to any review,

analysis, dispute or litigation concerning whether any "make-whole" payment or other

prepayment fees or premiums are a "First Lien Obligation"; provided further, that to the

extent the Court determines that such amounts constitute a "First Lien Obligation", the

Debtors shall be required to pay any such fees and expenses; and (ii) the foregoing is without

prejudice to whether or not any such fees and expenses, and additional fees and expenses of a

financial advisor in excess of $300,000, are allowable under section 506(b) of the

Bankruptcy Code or any other applicable basis).  None of the fees and expenses payable

pursuant to this paragraph 18(c) shall be subject to separate approval by this Court (but the

U.S. Trustee, the Debtors and the Committee may object to the reasonableness, as such

standard is used in section 506(b) of the Bankruptcy Code, of such fees and expenses and this

Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and

no recipient of any such payment shall be required to file any interim or final fee application

with respect thereto.  The Debtors shall pay the professional fees and expenses provided for

in this paragraph 18(c) promptly after receipt of monthly invoices therefor (redacted to

protect privileges), and the First Lien Indenture Trustee shall promptly provide copies of

such invoices (redacted to protect privileges) to the counsel to the Committee and to the U.S.

Trustee.

(d)    <u>Rights of Access and Information</u>.  As additional adequate protection,

the First Lien Indenture Trustee and its counsel and financial advisor shall be provided

reasonable access to the Debtors' attorneys and advisors and to such information as may be

reasonably requested.

19.    *Reservation of Rights of the First Lien Indenture Trustee and First Lien*

*Noteholders*.  The First Lien Indenture Trustee and First Lien Noteholders consent to the

adequate protection provided herein.  Notwithstanding any other provision hereof, but subject to

the terms of the Prepetition Intercreditor Agreements, the grant of adequate protection to the

First Lien Indenture Trustee and First Lien Noteholders pursuant to the terms of this Order is

without prejudice to the right, if any, of the First Lien Indenture Trustee and First Lien

Noteholders to seek modification of the grant of adequate protection provided hereby so as to

provide different or additional adequate protection, and without prejudice to the right of the

Debtors or any other party in interest (subject to the terms of the Prepetition Intercreditor

Agreements) to contest any such modification.

20.     *Adequate Protection for the 1.5 Lien Indenture Trustee and 1.5 Lien Noteholders.*
The 1.5 Lien Indenture Trustee and the 1.5 Lien Noteholders are entitled, pursuant to sections
361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their
interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the
aggregate diminution in value of their valid, perfected and enforceable interests in the Prepetition
Collateral, including without limitation, any such diminution resulting from the sale, lease or use
by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition
Collateral, the priming of the 1.5 Lien Indenture Trustee's liens on the Prepetition Collateral by
the DIP Liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy
Code (such diminution in value, the "1.5 Lien Adequate Protection Obligations").  As adequate
protection, the 1.5 Lien Indenture Trustee and the 1.5 Lien Noteholders are hereby granted the
following:

(a)     1.5 Lien Adequate Protection Liens. As security for the payment of the
1.5 Lien Adequate Protection Obligations, the 1.5 Lien Indenture Trustee (for itself and for
the benefit of the 1.5 Lien Noteholders) is hereby granted (effective and perfected as of the
date of the Interim Order and without the necessity of the execution by the Debtors of
security agreements, pledge agreements, mortgages, financing statements or other
agreements) a valid, perfected replacement security interest in and lien on all of the DIP
Collateral (the "1.5 Lien Adequate Protection Liens"), subject and subordinate only to (i) the
DIP Liens, (ii) the Carve-Out, (iii) the Cash Flow Adequate Protection Liens, (iv) the First
Lien Adequate Protection Liens, (iv) the liens securing the Cash Flow Obligations and the
First Lien Obligations and (v) the Non-Primed Liens, and subject further to the 1.5 Lien
Intercreditor Agreement.

- 47 -

(b)    <u>1.5 Lien 507(b) Claims</u>. The 1.5 Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "<u>1.5 Lien 507(b) Claims</u>"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out, (ii) the Superpriority Claims granted in respect of the DIP Obligations, (iii) the Prepetition ABL 507(b) Claims, (iv) the Cash Flow 507(b) Claims and (v) the First Lien 507(b) Claims; such subordination referenced in (iii), (iv) and (v) only to the extent set forth in the applicable Prepetition Intercreditor Agreements. The 1.5 Lien Indenture Trustee and the 1.5 Lien Noteholders shall not receive or retain any payments, property or other amounts in respect of the 1.5 Lien 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash and the Carve-Out amount is funded.  The order of priority of all 507(b) Claims (as defined below) shall be governed by the Prepetition Intercreditor Agreements.  In addition to, and notwithstanding anything to the contrary contained in this Order, any 1.5 Lien Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Cases in the manner set forth in such plan if holders of more than 66% (by amount) of the 1.5 Lien Adequate Protection Obligations consent to such treatment.

(c)    <u>Interest, Fees and Expenses</u>.  The Debtors are authorized and directed to pay as adequate protection to the 1.5 Lien Indenture Trustee all accrued and unpaid interest (including interest accrued prior to the Petition Date) on the loans constituting 1.5 Lien Obligations at the applicable non-default rate set forth in the 1.5 Lien Documents, and to pay all other accrued and unpaid fees and disbursements owing to the 1.5 Lien Indenture

Trustee under the 1.5 Lien Documents, as and when such interest, fees and disbursements become due and payable (but for the commencement of the Cases) in accordance with the terms of the 1.5 Lien Documents (which payments and pricing shall be without prejudice to the rights of the 1.5 Lien Indenture Trustee or 1.5 Lien Noteholders to assert a claim for the payment of additional interest calculated at any other rates applicable pursuant to the 1.5 Lien Indenture, and without prejudice to the rights of the Debtors or other party in interest to contest any such additional claims), in each case subject to Section 506(b) of the Bankruptcy Code.   As additional adequate protection, the Debtors shall also pay to the 1.5 Lien Indenture Trustee all reasonable fees and expenses of counsel payable to the 1.5 Lien Indenture Trustee under the 1.5 Lien Indenture (provided that (i) the Debtors shall not be required to pay as adequate protection any fees and expenses of counsel to the 1.5 Lien Indenture Trustee related to any review, analysis, dispute or litigation concerning whether any "make-whole" payment or other prepayment fees or premiums are a "1.5 Lien Obligation"; provided further, that to the extent the Court determines that such amounts constitute a "1.5 Lien Obligation", the Debtors shall be required to pay any such fees and expenses of counsel and (ii) the foregoing is without prejudice to whether or not any such fees and expenses are allowable under section 506(b) of the Bankruptcy Code or any other applicable basis).  None of the fees and expenses payable pursuant to this paragraph 20(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness, as such standard is used in section 506(b) of the Bankruptcy Code, of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  The Debtors shall pay the professional fees and expenses provided for in this paragraph 20(c) promptly after receipt of

monthly invoices therefor (redacted to protect privileges), and the 1.5 Lien Indenture Trustee

shall promptly provide copies of such invoices (redacted to protect privileges) to the counsel

to the Committee and to the U.S. Trustee.

(d)   Rights of Access and Information.  As additional adequate protection,

the 1.5 Lien Indenture Trustee and its counsel and financial advisor shall be provided

reasonable access to the Debtors' attorneys and advisors and to such information as may be

reasonably requested.

21.   *Reservation of Rights of the 1.5 Lien Indenture Trustee and 1.5 Lien Noteholders.*

The 1.5 Lien Indenture Trustee and 1.5 Lien Noteholders consent to the adequate protection

provided herein.  Notwithstanding any other provision hereof, but subject to the terms of the

Prepetition Intercreditor Agreements, the grant of adequate protection to the 1.5 Lien Indenture

Trustee and 1.5 Lien Noteholders pursuant to the terms of this Order is without prejudice to the

right, if any, of the 1.5 Lien Indenture Trustee and 1.5 Lien Noteholders to seek modification of

the grant of adequate protection provided hereby so as to provide different or additional adequate

protection, and without prejudice to the right of the Debtors or any other party in interest (subject

to the terms of the Prepetition Intercreditor Agreements) to contest any such modification.

22.   *Adequate Protection for the Second Lien Indenture Trustee and Second Lien*

*Noteholders.*  The Second Lien Indenture Trustee and the Second Lien Noteholders are entitled,

pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate

protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an

amount equal to the aggregate diminution in value of their valid, perfected and enforceable

interests in the Prepetition Collateral, including without limitation, any such diminution resulting

from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and

any other Prepetition Collateral, the priming of the Second Lien Indenture Trustee's liens on the

Prepetition Collateral by the DIP Liens and the imposition of the automatic stay pursuant to

section 362 of the Bankruptcy Code (such diminution in value, the "Second Lien Adequate

Protection Obligations", and together with the Prepetition ABL Adequate Protection Obligations,

Cash Flow Adequate Protection Obligations, First Lien Adequate Protection Obligations, the

"Adequate Protection Obligations").  As adequate protection, the Second Lien Indenture Trustee

and the Second Lien Noteholders are hereby granted the following:

(a)     Second Lien Adequate Protection Liens. As security for the payment

of the Second Lien Adequate Protection Obligations, the Second Lien Indenture Trustee (for

itself and for the benefit of the Second Lien Noteholders) is hereby granted (effective and

perfected as of the date of the Interim Order and without the necessity of the execution by the

Debtors of security agreements, pledge agreements, mortgages, financing statements or other

agreements) a valid, perfected replacement security interest in and lien on all of the DIP

Collateral (the "Second Lien Adequate Protection Liens" and, together with the Cash Flow

Adequate Protection Liens, the First Lien Adequate Protection Liens, and the 1.5 Lien

Adequate Protection Liens, the "Adequate Protection Liens")[7], subject and subordinate only

to (i) the DIP Liens, (ii) the Carve-Out, (iii) the Cash Flow Adequate Protection Liens, (iv)

the First Lien Adequate Protection Liens, (v) 1.5 Lien Adequate Protection Liens, (iv) the

liens securing the Cash Flow Obligations, the First Lien Obligations, the 1.5 Lien Obligations

and (vii) the Non-Primed Liens, and subject further to the Second Lien Intercreditor

Agreement.

---

[7] The term "Adequate Protection Liens" is defined by reference only to liens and security
interests granted pursuant to this Order on assets and property of the Debtors, and therefore, no
Adequate Protection Liens are granted pursuant to this Order on any assets or property of any
Non-Debtor Borrower or any non-Debtor affiliate of any Debtor.

(b)      Second Lien 507(b) Claims. The Second Lien Adequate Protection

Obligations shall constitute superpriority claims as provided in section 507(b) of the

Bankruptcy Code (the "Second Lien 507(b) Claims", together with the Prepetition ABL

507(b) Claims, Cash Flow 507(b) Claims, the First Lien 507(b) Claims and the 1.5 Lien

507(b) Claims, the "507(b) Claims"), with priority in payment over any and all

administrative expenses of the kinds specified or ordered pursuant to any provision of the

Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the

Bankruptcy Code, subject and subordinate only to (i) the Carve-Out, (ii) the Superpriority

Claims granted in respect of the DIP Obligations, (iii) the Prepetition ABL 507(b) Claims,

(iv) the Cash Flow 507(b) Claims, (v) the First Lien 507(b) Claims and (vi) the 1.5 Lien

507(b) Claims, such subordination referenced in (iii), (iv), (v), and (vi) only to the extent set

forth in the applicable Prepetition Intercreditor Agreements.  The Second Lien Indenture

Trustee and the Second Lien Noteholders shall not receive or retain any payments, property

or other amounts in respect of the Second Lien 507(b) Claims unless and until all DIP

Obligations shall have indefeasibly been paid in full in cash and the Carve-Out amount is

funded.  The order of priority of all 507(b) Claims shall be governed by the Prepetition

Intercreditor Agreements. In addition to, and notwithstanding anything to the contrary

contained in this Order, any Second Lien Adequate Protection Obligations may be satisfied

in a plan of reorganization confirmed in the Cases in such plan if holders of more than 66%

(by amount) of the Second Lien Adequate Protection Obligations consent to such treatment.

(c)      Fees and Expenses.  As additional adequate protection to the Second

Lien Indenture Trustee and the Second Lien Noteholders, the Debtors shall pay, subject to

the standard set forth in section 506(b) of the Bankruptcy Code, (i) to the Second Lien

Indenture Trustee all reasonable fees and expenses of the Second Lien Indenture Trustee and its counsel payable to the Second Lien Indenture Trustee under the Second Lien Indenture (provided that the Debtors shall not be required to pay as adequate protection any fees and expenses of counsel to the Second Lien Indenture Trustee related to any review, analysis, dispute or litigation concerning whether any "make-whole" payment or other prepayment fees or premiums are a "Second Lien Obligation"), (ii) to the Ad Hoc Committee of Second Lien Noteholders all reasonable, actual and documented fees and expenses of counsel and advisors incurred pursuant to the terms of the fee arrangement agreed between the Debtors and the Ad Hoc Committee of Second Lien Noteholders and such counsel and advisors, and (iii) to Apollo, solely in its capacity as a Second Lien Noteholder, all reasonable, actual and documented fees and expenses of counsel and advisors incurred pursuant to the terms of the fee arrangement agreed between the Debtors and Apollo and such counsel and advisors. None of the fees and expenses payable pursuant to this paragraph 22(c) shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtors and the Committee may object to the reasonableness, as such standard is used in section 506(b) of the Bankruptcy Code, of such fees and expenses and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtors shall pay the fees and expenses provided for in this paragraph 22(c) promptly after receipt of monthly invoices therefor (redacted to protect privileges), and the Second Lien Indenture Trustee shall promptly provide copies of such invoices (redacted to protect privileges) to the counsel to the Committee and to the U.S. Trustee.

(d)    <u>Rights of Access and Information</u>.  As additional adequate protection,

the Second Lien Indenture Trustee and its counsel and financial advisor shall be provided

reasonable access to the Debtors' attorneys and advisors and to such information as may be

reasonably requested.

23.      *Reservation of Rights of the Second Lien Indenture Trustee, Second Lien*

*Noteholders, Ad Hoc Committee of Second Lien Noteholders and Apollo*.  The Second Lien

Indenture Trustee, the Second Lien Noteholders, the Ad Hoc Committee of Second Lien

Noteholders and Apollo consent to the adequate protection provided herein.  Notwithstanding

any other provision hereof, but subject to the terms of the Prepetition Intercreditor Agreements,

the grant of adequate protection to the Second Lien Indenture Trustee, the Second Lien

Noteholders, the Ad Hoc Committee of Second Lien Noteholders and Apollo pursuant to the

terms of this Order is without prejudice to the right, if any, of the Second Lien Indenture Trustee,

the Second Lien Noteholders, the Ad Hoc Committee of Second Lien Noteholders and Apollo to

seek modification of the grant of adequate protection provided hereby so as to provide different

or additional adequate protection, and without prejudice to the right of the Debtors or any other

party in interest (subject to the terms of the Prepetition Intercreditor Agreements) to contest any

such modification.

24.      *Perfection of DIP Liens and Adequate Protection Liens*.

(a)      The DIP Agents and each of the Prepetition Agents, as applicable, are

hereby authorized, but not required, to file or record financing statements, intellectual

property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take

possession of or control over, or take any other action in order to validate and perfect the DIP

Liens or the applicable Adequate Protection Liens granted to them hereunder or under the

Interim Order, subject to the terms of the Prepetition Intercreditor Agreements and the DIP

Intercreditor Agreement. Whether or not the DIP Agents or any of the Prepetition Agents, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the applicable Adequate Protection Liens, such DIP Liens and such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or, other than as set forth in the Prepetition Intercreditor Agreements or the DIP Intercreditor Agreement, subordination as of the date of entry of the Interim Order.

(b)    A certified copy of the Interim Order or this Order may, in the discretion of the applicable DIP Agent or Prepetition Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order or this Order for filing and recording.

(c)    The Debtors shall execute and deliver to the DIP Agents or the applicable Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the applicable DIP Agent or Prepetition Agent, as the case may be, may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the applicable Adequate Protection Liens.  The Debtors shall cause each of the Non-Debtor Borrowers to use commercially reasonable efforts to take such actions necessary to grant and perfect or otherwise reaffirm the perfection of the liens contemplated in the DIP Documents to be granted or so reaffirmed by such Non-Debtor Borrowers.

(d)      Any provision of any lease or other license, contract or other

agreement that requires (i) the consent or approval of one or more landlords or other parties

or (ii) the payment of any fees or obligations to any governmental entity, in order for any

Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the

proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent

with the applicable provisions of the Bankruptcy Code, and any such provision shall have no

force and effect with respect to the granting of the DIP Liens or the Adequate Protection

Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any

Debtor in favor of the DIP Lenders or Prepetition Secured Party in accordance with the terms

of the DIP Documents or this Order.

25.      *Preservation of Rights Granted Under the Order.*

(a)      Other than the DIP Liens and the Superpriority Claims, and subject to

the terms of the Prepetition Intercreditor Agreements, no claim or lien having a priority

senior to or *pari passu* with those granted by the Interim Order or this Order to the

Prepetition Agents shall be granted or allowed while any portion of the Adequate Protection

Obligations remain outstanding, and the Adequate Protection Liens shall not be subject or

junior to any lien or security interest that is avoided and preserved for the benefit of the

Debtors' estates under section 551 of the Bankruptcy Code or, except as set forth in the

Prepetition Intercreditor Agreements, subordinated to or made *pari passu* with any other lien

or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)      Unless all DIP Obligations shall have been indefeasibly paid in full in

cash, it shall constitute an Event of Default under the DIP Credit Agreements and a

termination of the right to use the Cash Collateral if any of the Debtors seeks, or if there is

entered, any modification of this Order without the prior written consent of the DIP Agents,

and no such consent shall be implied by any other action, inaction or acquiescence by the

DIP Agents or an order is entered converting or dismissing any of the Cases.  The Debtors'

right to use Prepetition Collateral (including Cash Collateral) shall terminate if any of the

Debtors seeks, or if there is entered, any modification of this Order that adversely affects any

lien, claim, right, or other protection (including without limitation Adequate Protection)

granted to or for the benefit of any Prepetition Agent or Prepetition Secured Party without the

prior written consent of such Prepetition Agent or Prepetition Secured Party, and no such

consent shall be implied by any other action, inaction, or acquiescence by any Prepetition

Agents or Prepetition Secured Party, or an order is entered converting or dismissing any of

the cases.

        (c)      If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i)

the validity, priority or enforceability of any DIP Obligations or the Adequate Protection

Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur

or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection

Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash

Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the

Debtors to the DIP Agents, the DIP Lenders or to the Prepetition Secured Parties, as the case

may be, prior to the effective date of such reversal, stay, modification or vacatur shall be

governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP

Lenders, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies,

privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order, the DIP

Documents (with respect to all DIP Obligations), the Adequate Protection Obligations and uses of the Cash Collateral.

(d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties granted by the Interim Order, this Order, and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Cases, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Adequate Protection Obligations, the Superpriority Claims, the 507(b) Claims, and the other administrative claims granted pursuant to the Orders, and all other rights and remedies of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties granted by the Orders and the DIP Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash and all Adequate Protection Obligations are indefeasibly paid in full in cash or otherwise satisfied in accordance with paragraph 13(b), 16(b), 18(b), 20(b) or 22(b), as applicable.

(e)     Subject to the applicable Prepetition Intercreditor Agreements, all parties reserve their rights to argue that, to the extent that any cash payment of  interest, fees

and expenses as adequate protection to the Prepetition Secured Parties is not allowed under

section 506(b) of the Bankruptcy Code or on any other basis (including, without limitation,

on account of such Prepetition Secured Parties consenting to the Debtors' entry into and

performance under the DIP Documents or to the Debtors' use of Prepetition Collateral,

including Cash Collateral, the imposition of the automatic stay, such Prepetition Secured

Parties being party to that certain Restructuring Support Agreement dated as of April 13,

2014, to which the Debtors are party and such Prepetition Secured Parties being party to that

certain Backstop Commitment Agreement dated as of May 9, 2014, to which the Debtors are

party), such payments should be recharacterized and applied as payments of principal owed

under the applicable Prepetition Debt Documents; provided, however, that the Prepetition

Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise

oppose any such recharacterization or application.

(f)    Notwithstanding anything to the contrary contained in this Order, (x)

in respect of Holdings, the First Lien Adequate Protection Liens, the 1.5 Lien Adequate

Protection Liens and the Second Lien Adequate Protection Liens shall only encumber the

assets of Holdings, and the First Lien 507(b) Claims, the 1.5 Lien 507(b) Claims and the

Second Lien 507(b) Claims shall only be asserted against Holdings or satisfied by any of its

assets, to the extent any DIP Collateral, Prepetition Collateral or DIP Loans, or the proceeds

of any of the foregoing, are transferred to Holdings (without limiting the restrictions on such

transfers contained in the DIP Documents), or otherwise used to pay the administrative

expenses of Holdings during the Cases and (y) the assets of Holdings shall only be used to

pay or otherwise satisfy the DIP Liens, the First Lien Adequate Protection Liens, the 1.5 Lien

Adequate Protection Liens, the Second Lien Adequate Protection Liens, the Superpriority

Claims, the First Lien 507(b) Claims, the 1.5 Lien 507(b) Claims and the Second Lien 507(b)

Claims to the extent necessary after commercially reasonable efforts have been undertaken

by the DIP Agents and the Prepetition Secured Parties, as applicable, to pay or otherwise

satisfy such DIP Liens and Superpriority Claims, and thereafter, such Adequate Protection

Liens and such 507(b) Claims, from other DIP Collateral.  Holdings shall provide prompt

written notice to GE Capital Equity Investments, Inc. of any action taken to cause repayment

of such DIP Liens, Superpriority Claims, Adequate Protection Liens or 507(b) Claims from

assets of Holdings.

26.    *Effect of Stipulations on Third Parties*.  The stipulations and admissions contained

in this Order, including without limitation, in paragraphs 4 and 14 of this Order, shall be binding

upon the Debtors under all circumstances. The stipulations and admissions contained in this

Order, including without limitation, in paragraphs 4 and 14 of this Order, shall be binding upon

all parties in interest unless (a) any party-in-interest (including the Committee) that successfully

seeks and obtains standing to do so has timely filed an adversary proceeding or contested matter

(subject to the limitations contained herein, including without limitation, in this paragraph 26) on

or before the earlier of (1) 90 days after entry of this Order and (2) the commencement of a

hearing with respect to the confirmation of a plan of reorganization for any of the Debtors (such

earlier date, the "Objection Deadline"); provided that the Objection Deadline is subject to

extension as may be specified by this Court for cause shown (and the Objection Deadline shall

be tolled pending entry of an order by this Court ruling on any motion for such an extension

made before the expiration of such period) or if the applicable Prepetition Agent agrees to such

an extension with respect to any Claims and Defenses in respect of the Prepetition ABL

Obligations, the Cash Flow Obligations, the First Lien Obligations, the 1.5 Lien Obligations or

the Second Lien Obligations, as applicable, (i) challenging the validity, enforceability, priority or

extent of (A) the Prepetition ABL Obligations or the liens on Prepetition Collateral securing the

Prepetition ABL Obligations, (B) the Cash Flow Obligations or the liens on the Prepetition

Collateral securing the Cash Flow Obligations, (C) the First Lien Obligations or the liens on the

Prepetition Collateral securing the First Lien Obligations, (D) the 1.5 Lien Obligations or the

liens on Prepetition Collateral securing the 1.5 Lien Obligations or (E) the Second Lien

Obligations or the liens on Prepetition Collateral securing the Second Lien Obligations or (ii)

otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or

causes of action, objections, contests or defenses (collectively, the "Claims and Defenses")

against any of the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries,

directors, officers, representatives, attorneys or advisors, each in their capacity as such, in

connection with any matter related to the Prepetition ABL Obligations, the Cash Flow

Obligations, the First Lien Obligations, the 1.5 Lien Obligations, the Second Lien Obligations or

the Prepetition Collateral and (b) an order is entered and becomes final in favor of the plaintiff

sustaining any such challenge or claim in any such timely filed adversary proceeding or

contested matter; provided that, as to the Debtors, all such Claims and Defenses, except with

respect to the value of Prepetition Collateral other than in respect of the Prepetition ABL

Obligations, are hereby irrevocably waived, released and relinquished as of the Petition Date. If

no such adversary proceeding or contested matter is timely filed in respect of the  Prepetition

ABL Obligations, the Cash Flow Obligations, the First Lien Obligations, the 1.5 Lien

Obligations or the Second Lien Obligations, as the case may be, (x) the  Prepetition ABL

Obligations, the Cash Flow Obligations, the First Lien Obligations, the 1.5 Lien Obligations and

the Second Lien Obligations, as the case may be, shall constitute allowed claims, not subject to

counterclaim, setoff, subordination (except as set forth in the applicable Prepetition Intercreditor

Agreement), recharacterization, defense or avoidance, for all purposes in the Cases and any

subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition

ABL Obligations, the Cash Flow Obligations, the First Lien Obligations, the 1.5 Lien

Obligations and the Second Lien Obligations, as the case may be, shall be deemed to have been,

as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in

paragraphs 4(b), 4(h), 4(j), and 4(l) as applicable, not subject to defense, counterclaim,

recharacterization, subordination (except as set forth in the applicable Prepetition Intercreditor

Agreement) or avoidance and (z) the Prepetition ABL Obligations, the Prepetition ABL Lenders,

the Prepetition ABL Agent, the Cash Flow Obligations, the Cash Flow Lenders, the Cash Flow

Agent, the First Lien Obligations, the First Lien Indenture Trustee, the First Lien Noteholders,

the 1.5 Lien Obligations, the 1.5 Lien Indenture Trustee, the 1.5 Lien Noteholders, the Second

Lien Obligations, the Second Lien Indenture Trustee and the Second Lien Noteholders, each in

their capacity as such, as the case may be, and the liens on the Prepetition Collateral granted to

secure the Prepetition ABL Obligations, the Cash Flow Obligations, the First Lien Obligations,

the 1.5 Lien Obligations and the Second Lien Obligations, as the case may be, shall not be

subject to any other or further challenge, except with respect to the value of the Prepetition

Collateral (other than in respect of the Prepetition ABL Obligations), by any party-in-interest

(including the Committee), and such party-in-interest shall be enjoined from seeking to exercise

the rights of the Debtors' estates, including without limitation, any successor thereto (including,

without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for

any of the Debtors).  If any such adversary proceeding or contested matter is timely filed, the

stipulations and admissions contained in paragraphs 4 and 14 of this Order shall nonetheless

remain binding and preclusive (as provided in the third sentence of this paragraph) on all parties-in-interest (including the Committee), except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.  In the event that there is a timely successful challenge by a final non-appealable order, pursuant and subject to the limitations contained in this paragraph 26, to the repayment of the Prepetition ABL Obligations pursuant to this Order based upon a successful challenge to the validity, enforceability, extent, perfection or priority of the Prepetition ABL Obligations or the liens securing the same, the Court shall have the power to unwind or otherwise modify (which might include the disgorgement or reallocation of interest, fees, principal or other incremental consideration paid in respect of the Prepetition ABL Obligations or the avoidance of liens and/or guarantees with respect to the Debtors), as the Court shall determine; provided that the proceeds of any disgorgement or unwinding of the repayment of the Prepetition ABL Obligations shall be paid directly to the DIP Term Loan Agent and promptly applied to prepay the DIP Term Loans then outstanding in accordance with the terms of the DIP Term Loan Agreement.  For the avoidance of doubt, (x) any stipulations and admissions contained in this Order, including without limitation, in paragraphs 4 and 14 of this Order, shall be operative with respect to Apollo and its respective agents, officers, directors, employees, attorneys, and advisors solely to the extent that Apollo is one of the Prepetition Secured Parties, solely in that specific capacity (and as to agents, officers, directors, employees, attorneys, and advisors of Apollo, solely as such with respect to Apollo in that specific capacity), and solely with respect to Claims and Defenses that would apply equally to all other holders of Second Lien Notes and thus are not unique vis-à-vis Apollo (collectively, "Generalized Second Lien Claims and Defenses"); and (y) nothing in this Order shall operate to waive, release, or otherwise affect any Claims and Defenses that may exist

with respect to Apollo or its respective affiliates, subsidiaries, agents, officers, directors,

employees, attorneys, and advisors other than, subject to the provisions and limitations contained

in this Order, including without limitation, in this paragraph 26, Generalized Second Lien Claims

and Defenses.

27.     *Limitation on Use of DIP Loans, DIP Collateral and Prepetition Collateral*.  The

Debtors shall use the DIP Loans and the Prepetition Collateral (including the Cash Collateral)

solely as provided in the Orders and the DIP Documents.  Notwithstanding anything herein or in

any other order of this Court to the contrary, no DIP Loans, no DIP Collateral, no Prepetition

Collateral (including the Cash Collateral) nor the Carve-Out may be used to (a) object, contest or

raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due

under the DIP Documents, the Prepetition ABL Documents or the liens or claims granted under

the Orders, the DIP Documents or the Prepetition ABL Documents, (b) assert any Claims and

Defenses or any other causes of action against the DIP Agents, the DIP Lenders, the Prepetition

Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers,

representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agents'

assertion, enforcement or realization on the DIP Collateral in accordance with the DIP

Documents, the DIP Intercreditor Agreement or this Order, (d) seek to modify any of the rights

granted to the DIP Agents, the DIP Lenders or the Prepetition Secured Parties under the Orders

or under the DIP Documents or the Prepetition Debt Documents, in the case of each of the

foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any

amount on account of any claims arising prior to the Petition Date unless such payments are (i)

approved by an order of this Court and (ii) permitted under the DIP Documents; provided that,

notwithstanding anything to the contrary herein, no more than an aggregate of $250,000 (subject

to an increase of no more than $250,000, for cause, on motion to the Court as provided in the

preceding paragraph) of the Prepetition Collateral (including the Cash Collateral), the DIP

Loans, the DIP Collateral or the Carve-Out may be used by the Committee to investigate the

validity, enforceability or priority of the Prepetition ABL Obligations, the Cash Flow

Obligations, the First Lien Obligations, the 1.5 Lien Obligations, the Second Lien Obligations or

the liens on the Prepetition Collateral securing the Prepetition ABL Obligations, the Cash Flow

Obligations, the First Lien Obligations, the 1.5 Lien Obligations or the Second Lien Obligations,

or investigate any Claims and Defenses against the Prepetition Secured Parties.

28.     *Insurance*.  To the extent any Prepetition Secured Party is listed as loss payee

under the Debtors' insurance policies, each of the DIP Agents is also deemed to be the loss payee

under the Debtors' insurance policies and shall act in that capacity and subject to the terms of the

DIP Documents, distribute any proceeds recovered or received in respect of any such insurance

policies, first, to the payment in full of the DIP Obligations, and second, to the payment of the

Cash Flow Obligations, First Lien Obligations, 1.5 Lien Obligations and the Second Lien

Obligations, subject to and in accordance with the Prepetition Intercreditor Agreements and the

DIP Intercreditor Agreement.

29.     *Order Governs*.  Except as amended, supplemented, or otherwise modified by this

Order, all of the provisions of the Interim Order shall remain in full force and effect and are

hereby ratified by this Order. In the event of any inconsistency among the provisions of this

Order, the Interim Order, and the DIP Documents, the provisions of this Order shall govern.

30.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions

of the Orders, including all findings in the Orders, shall be binding upon all parties-in-interest in

the Cases, including without limitation, the DIP Agents, the DIP Lenders, the Prepetition

Secured Parties, and the Debtors and their respective successors and assigns (including any

chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an

examiner with expanded powers appointed pursuant to section 1104 of the Bankruptcy Code, or

any other fiduciary appointed as a legal representative of any of the Debtors or with respect to

the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents,

the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors

and assigns; provided that, except to the extent expressly set forth in this Order, the DIP

Documents, the Prepetition Intercreditor Agreements or the DIP Intercreditor Agreement, the

DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to

permit the use of the DIP Loans or the Cash Collateral or extend any financing to any chapter 7

trustee or similar responsible person appointed for the estates of the Debtors.

31.    *Limitation of Liability*.  In determining to make any loan under the DIP Credit

Agreements, permitting the use of Cash Collateral or in exercising any rights or remedies as and

when permitted pursuant to this Order or the DIP Documents, the DIP Agents, the DIP Lenders

and the Prepetition Secured Parties shall not be deemed to be in control of the operations of the

Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the

operation or management of the Debtors (as such terms, or any similar terms, are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, 29

U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Subject to paragraph

26, nothing in the Orders or in the DIP Documents shall in any way be construed or interpreted

to impose upon the DIP Agents, the DIP Lenders or any Prepetition Secured Party any liability

for any claims arising from the pre-petition or post-petition activities of any of the Debtors.

32.    *Prepetition Intercreditor Agreements.*  Nothing in this Order shall amend or

otherwise modify the terms or enforceability of the Prepetition Intercreditor Agreements,

including without limitation, the turnover provisions contained therein, and the Prepetition

Intercreditor Agreements shall each remain in full force and effect.  The rights of the Prepetition

Secured Parties shall at all times remain subject to the applicable Prepetition Intercreditor

Agreement.

33.    *Commitment/Fee Letters.*  The Commitment/Fee Letters were authorized by the

Interim Order to be filed and were filed in redacted form satisfactory to the DIP Agents and

unredacted copies shall be provided solely to (i) the U.S. Trustee, (ii) counsel to the Committee,

(iii) this Court and (iv) any other party as may be ordered by this Court after notice and a

hearing, or agreed by the Debtors and the DIP Agents (collectively, the "Limited Notice

Parties").  The Limited Notice Parties shall at all times keep the Commitment/Fee Letters strictly

confidential and shall not disclose the contents of the Commitment/Fee Letters to any party

whatsoever, including but not limited to their respective clients.  Any pleadings filed in these

Cases that reference or disclose information that is redacted from the Commitment/Fee Letters

shall be filed under seal or redacted accordingly.

34.    *Proofs of Claim.*  The Prepetition Agents and other Prepetition Secured Parties

will not be required to file proofs of claim in any of the Cases for any claim as to which the

Debtors have stipulated in paragraph 4 of this Order.

35.    *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law

and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of

this Order.

Dated:    May 23, 2014
          White Plains, New York

                              /s/Robert D. Drain
                              THE HONORABLE ROBERT D. DRAIN,
                              UNITED STATES BANKRUPTCY JUDGE