1

2  UNITED STATES BANKRUPTCY COURT
   SOUTHERN DISTRICT OF NEW YORK
3
4  - - - - - - - - - - - - - - - - - -x

5  In re:                                Chapter 11

6                                        Case No. 14-22503-rdd

7  MPM SILICONES, LLC, et al.,

8

9                Debtors.

10

11 - - - - - - - - - - - - - - - - - -x

12

13                United States Bankruptcy Court

14                300 Quarropas Street

15                White Plains, New York

16

17

18

19

20 B E F O R E:

21 HON. ROBERT D. DRAIN

22 U.S. BANKRUPTCY JUDGE

23

24

25

1   Notice of Requisite First Lien Noteholders' Motion Pursuant to

2   Bankruptcy Rule 9006(c)-1 for Entry of an Order Shortening Time

3   with Respect to Motion Pursuant to Bankruptcy Rule 3018(a) to

4   Change Votes Relating to Debtors' Joint Chapter 11 Plan of

5   Reorganization.

6

7   Motion to Allow / Motion Requesting Authority for the Requisite

8   1.5 Lien Noteholders to Change their Votes from Rejecting to

9   Accepting the Debtors' Proposed Plan of Reorganization.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2    A P P E A R A N C E S :

 3    WILLKIE FARR & GALLAGHER, LLP

 4         Attorneys for Debtors

 5         787 Seventh Avenue

 6         New York, NY 10019

 7

 8    BY:   MATTHEW A. FELDMAN, ESQ.

 9         JOSEPH BAIO, ESQ.

10         ROGER NETZER, ESQ.

11

12

13    UNITED STATES DEPARTMENT OF JUSTICE

14         Office of the United States Trustee

15         210 Varick Street

16         Room 1006

17         New York, NY 10014

18

19    BY:   BRIAN S. MASUMOTO, ESQ.

20

21

22

23

24

25
```

```
 1    MILBANK, TWEED, HADLEY & MCCLOY LLP

 2          Attorneys for Ad Hoc Committee of Second Lien Holders

 3          One Chase Manhattan Plaza

 4          New York, NY 10005

 5

 6    BY:   DENNIS F. DUNNE, ESQ.

 7          ANDREW M. LEBLANC, ESQ.

 8          MICHAEL HIRSCHFELD, ESQ.

 9          SAMUEL KHALIL, ESQ.

10

11

12    QUINN EMANUEL URQUHART & SULLIVAN, LLP

13          Attorneys for U.S. Bank, N.A.

14          51 Madison Avenue

15          22nd Floor

16          New York, NY 10010

17

18    BY:   SUSHEEL KIRPALANI, ESQ.

19          ROBERT S. LOIGMAN, ESQ.

20

21

22

23

24

25
```

```
 1    CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP

 2         Attorneys for requisite 1.5 lien noteholders

 3         101 Park Avenue

 4         New York, NY 10178

 5

 6    BY:   THERESA A. FOUDY, ESQ.

 7          MICHAEL J. MOSCATO, ESQ.

 8

 9

10    ROPES & GRAY LLP

11         Attorneys for Wilmington Trust, Trustee of 1.5 Notes

12         1211 Avenue of the Americas

13         New York, NY 10036

14

15    BY:   MARK I. BANE, ESQ.

16          MARK R. SOMERSTEIN, ESQ.

17

18

19    KLEE, TUCHIN, BODANOFF & STERN, LLP

20         Attorneys for the Committee

21         1999 Avenue of the Stars

22         Thirty-Ninth Floor

23         Los Angeles, CA 90067

24

25    BY:   WHITMAN L. HOLT, ESQ.
```

```
 1

 2    IRELL & MANELLA LLP

 3          Attorneys for Bank of New York Mellon Trust Company

 4          1800 Avenue of the Stars

 5          Suite 900

 6          Los Angeles, CA 90067

 7

 8    BY:   JEFFREY REISNER, ESQ.

 9

10

11    DECHERT LLP

12          Attorneys for First Lien Trustee

13          1095 Avenue of the Americas

14          New York, NY 10036

15

16    BY:   MICHAEL J. SAGE, ESQ.

17

18

19    WILMER CUTLER PICKERING HALE & DORR LLP

20          Attorneys for First Lien Holders

21          7 World Trade Center

22          250 Greenwich Street

23          New York, NY 10007

24

25    BY:   PHILIP ANKER, ESQ.
```

```
 1

 2    AKIN GUMP STRAUSS HAUER & FELD LLP

 3          Attorneys for Apollo

 4          One Bryant Park

 5          New York, NY 10036

 6

 7    BY:    ABID QURESHI, ESQ.

 8

 9

10    ALSO PRESENT:

11          Amy Swedberg, Maslon Edelman Bowman & Brand,

12          US Bank, Trustee

13

14          Sina Toussi, VR Capital, Creditor

15

16

17

18

19

20

21

22

23

24

25
```

1       I have two motions before me by representatives of certain

2   first and 1.5 lien holders, who seek to change their votes on

3   the debtors' Chapter 11 plan pursuant to Bankruptcy Rule 3018.

4       Based on the declarations attached to the motions or

5   admitted into evidence, it appears clear that if the motions

6   were granted, both Class 4 and Class 5 under the plan would,

7   instead of having rejected the plan, accept the plan.

8       The premise of the motions is that, by having the

9   votes changed, the movants would have the benefit of the so-

10  called toggle or carrot-and-stick or fish-or-cut-bait or death-

11  trap provision in the plan, in Sections 5.4, with respect to

12  the first lien notes, and 5.5 with respect to the 1.5 lien

13  notes, which provides that if Class 4 or 5, as the case may be,

14  votes to accept or is presumed to have accepted the proposed

15  plan, such class will receive payment in full in cash on

16  account of their secured claims without any premium or make-

17  whole amount.

18      The plan sections that I've referred to then go on to

19  state that if the respective classes vote to reject the

20  proposed plan, Classes 4 and 5 will receive replacement notes

21  issued by Momentive Performance Materials Inc. in the amount of

22  their allowed claim, including, if the Court so determines, a

23  make-whole amount.

24      The plan was resoundingly rejected by the votes of

25  Classes 4 and 5, comprising first and 1.5-lien noteholders,

1   including in large respect by the same institutions that wish

2   to change their votes at this time.

3        As a result of that rejection, the debtors, as

4   proponents of the plan, proceeded to seek confirmation on a

5   cramdown basis under Section 1129(b)(1) and (2) of the

6   Bankruptcy Code over those two classes.

7        The Court issued a bench ruling at the conclusion of

8   the four-day confirmation hearing which held that it would not

9   allow, as part of the first and 1.5 lien holders' allowed

10  claim, a make-whole claim or other premium for being paid

11  earlier than the original maturity date of their notes, and

12  also concluded that the plan could be confirmed, albeit with a

13  change to the interest rate in the proposed replacement notes

14  provided for therein.  The plan has since been amended to

15  conform to the Court's ruling with respect to the proper

16  interest rate.

17       It is only in that context, and as also, I believe,

18  implicitly clarified by Mr. Chou's declaration, which states

19  that thereafter the trading prices of the first lien notes

20  substantially decreased, that the movants have sought to change

21  their votes.

22       Bankruptcy Rule 3018(a) provides in pertinent part

23  that "[f]or cause shown, the court, after notice and hearing

24  may permit a creditor or equity security holder to change or

25  withdraw an acceptance or rejection," that is, an acceptance or

1    rejection of a Chapter 11 plan.

2        Before the 1991 amendments of the Bankruptcy Rules,

3    Bankruptcy Rule 3018(a) also required that any motion to change

4    or withdraw a vote be made before the deadline for voting had

5    passed, but this was repealed in the form of the current

6    version of the rule, which retained, however, the "for cause

7    shown" requirement.  See Advisory Committee Notes to the 1991

8    amendments.

9        There is no explanation as to why the change was made.

10   However, notwithstanding the deleted clause, several cases

11   decided before the 1991 amendment ignored the timing limitation

12   upon a sufficient showing of cause, which suggests that the

13   committee concluded that under the right circumstances, as was

14   consistent with practice already, a post-ballot deadline vote

15   could be changed.  See Texas Extrusion Corp v. Lockheed Corp.

16   (In re Texas Extrusion Corp.), 844 F.2d 1142, 1146 (5th Cir.

17   1988), cert. denied, 488 U.S. 926 (1988); In re Jartran Inc.,

18   44 B.R. 331, 363 (Bankr. N.D. Ill. 1984); and In re American

19   Solar King Corp., 90 B.R. 808, 827 (W.D. Tex. 1988); see

20   generally In re Eastern Systems Inc., 118 B.R. 223 (Bankr.

21   S.D.N.Y. 1990).

22       "Cause" is not defined in Rule 3018.  It is instead

23   left up to the court to determine in the exercise of its

24   discretion.  See In re J.C. Householder Land Trust #1, 502 B.R.

25   602, 605-606 (Bankr. M.D. Fla. 2013).

1           It is clear from the cases that the test for cause

2     very much depends on the context.  As stated by the editors of

3     Collier on Bankruptcy, "The test for determining whether cause

4     has been shown for purposes of Bankruptcy Rule 3018(a) should

5     often not be a difficult one to meet.  As long as the reason

6     for the vote change is not tainted, the change should usually

7     be permitted.  The court must ensure only that the change is

8     not improperly motivated."  9 Collier on Bankruptcy, paragraph

9     3018.01[4] (16th ed. 2014).

10          Thus, certain types of "cause" are obvious and covered

11    by the "should not often be difficult to meet" language in

12    Collier's.  As illustrations, Collier gives three hypothetical

13    examples, all of which are attributable to human error, where

14    it is clear "the vote should be changed in order to allow the

15    voting entity to intelligently express its will," In re Kellog

16    Square Partnership, 160 B.R. 332, 334 (Bankr. D. Minn. 1993):

17    (1) a breakdown in communications at the voting entity for the

18    creditor, (2) a misreading of the terms of the plan, and (3)

19    execution of the ballot by someone who did not have authority,

20    identified within a reasonable time by someone who did have

21    such authority.  9 Collier on Bankruptcy ¶ 3018.01[4].

22          That statement is clearly consistent with the case

23    law, although those facts do not normally make their way into

24    the reported decisions.  The reported decisions more often deal

25    with a more difficult type of asserted cause and address

1    whether the vote change is somehow tainted.  They involve

2    instances where the creditor believes the change in the vote

3    will benefit it, based on new facts.

4         Those types of decisions have been cited by both sides

5    in connection with the motions before me.  Those decisions have

6    reached, I believe, a proper and general consensus.

7         First, the courts have held, I believe uniformly, that

8    changing a vote based on the creditor's subsequent assessment

9    that the vote will actually have meaning, if changed, will not

10   be permitted unless the change is supported or agreed to by the

11   plan proponent.

12        Often, this issue comes up in the context of a party

13   who opposed the plan acquiring the claim of a creditor who

14   voted in favor of the plan and then seeking to change that

15   creditor's vote to enhance the objector's leverage in opposing

16   confirmation, such as by being able to force a cramdown.  See,

17   for example, the Eastern Systems case that I've previously

18   cited, and In re Windmill Durango Office, LLC, 481 B.R. 51

19   (B.A.P. 9th Cir. 2012), where the Rule 3018 motions were

20   denied.

21        On the other hand, where the plan proponent does not

22   oppose the vote being changed, the courts generally support the

23   change over the objection of a still-dissenting creditor, in

24   furtherance of the courts' and the Code's policy in favor of

25   consensual negotiation of Chapter 11 plans.  See, for example,

1    In re Dow Corning, Corp., 237 B.R. 374 (Bankr. E.D. Mich.

2    1999).

3            Even in that context, some courts have looked askance

4    at such a change, however, worried about the effect on the

5    bankruptcy process of the after-the-fact alteration of the

6    vote.  See In re MCorp Financial Inc., 137 B.R. 237 (Bankr.

7    S.D. Tex. 1992), which, however, I will note may have been

8    influenced by the fact that the pre-1991 version of Rule 3018

9    was being considered.

10            As stated in the Windmill Durango case, which

11    sustained the bankruptcy court's decision not to permit the

12    vote change when the change was intended to further the

13    movant's objection to the Chapter 11 plan, "'Cause' under Rule

14    3018(a) required something more than a mere change of heart,"

15    481 B.R. at 66, and should not be permitted where it "did the

16    [confirmation] process violence."  Id.

17            The movants here argue that they are, or their vote

18    change would be, in line with cases that permit a vote change

19    in furtherance of a consensual plan, such as the cases I've

20    cited for that proposition, as well as In re Cajun Electric

21    Power Coop., 230 B.R. 715 (Bankr. M.D. La. 1999), and In re CGE

22    Shattuck, LLC., 2000 Bankr. LEXIS 1806 at *9 (Bankr. D.N.H.

23    November 28th, 2000), which state the apple-pie proposition in

24    bankruptcy cases that "the goal after all is consensual plans.

25    Such being the goal, what greater evidence of cause exists than

1    where major parties in a chapter 11 proceeding negotiate a

2    settlement." Cajun Electric, 230 B.R. at 744 (quoting In

3    American Solar King, 90 B.R. at 825).

4          If it were the case here that the plan proponents

5    supported the requested vote change as part of a consensual

6    resolution of the parties' disputes (and the facts did not

7    indicate any extra consideration being offered for the changed

8    vote--although I would in all likelihood hold a hearing focused

9    on that issue), I would approve the changed vote. That is, I

10   would not follow MCorp Financial.

11         However, it is clear to me that this is not the case.

12   Here, the changed vote in the present context would not be in

13   furtherance of a consensual plan. As I noted, the plan

14   provided a choice for the first and 1.5 lien holders. Either

15   they could vote in favor of the plan and receive the treatment

16   that they are looking to have now although they instead voted

17   against the plan; or, alternatively, if they voted against the

18   plan, they would have the treatment that they're trying to

19   avoid now although they did in fact vote against the plan.

20         Such fish-or-cut-bait, death-trap, or toggle

21   provisions have long been customary in Chapter 11 plans. See

22   In re Drexel Burnham Lambert Group, 138 B.R. 714, 717 (Bankr.

23   S.D.N.Y. 1992), and In re Adelphia Communications Corp., 368

24   B.R. 140, 275 (Bankr. S.D.N.Y. 2007). There is a clear

25   rationale behind such provisions, as stated by the court in In

1    re Zenith Electrics Corporation: "If the class accepts, the

2    plan proponent is saved the expense and uncertainty of a

3    cramdown fight," which is in keeping with the Bankruptcy Code's

4    overall policy of fostering consensual plans of reorganization.

5    241 B.R. 92, 105 (Bankr. D. Del. 1998).  That is, such

6    provisions offer a choice to avoid the expense and, more

7    importantly, the uncertainty of a contested cramdown hearing.

8         The first and 1.5 lien holders clearly are

9    sophisticated institutions represented by knowledgeable and

10   sophisticated professionals.  They made the choice to vote

11   against the plan, and I believe it would not be proper, and

12   that they have not shown cause now, to change that vote in

13   order to undo its consequences.

14        I do not believe the plan's toggle or fish-or-cut-bait

15   offer is still open.  If it were, the debtors would have

16   accepted it.  Instead, I'm advised that if I were to grant the

17   motions, rather than look to consummate the plan with the cash-

18   out provision in it, the debtors would seek to amend the plan

19   under Bankruptcy Rule 3019 and Section 1127 of the Bankruptcy

20   Code.  I assume, in addition, that the second lien holders who

21   voted in favor of the plan and who are backstopping the rights

22   offering and have various rights based on the timing of

23   confirmation and the reasonable nature of the order confirming

24   the plan would seek to support that attempt to amend the plan

25   and potentially withdraw their support of the plan and the

1    backstop of the rights offering.

2         The debtors and the second lien holders might or might

3    not win, ultimately, on those attempts.  And I suppose it is

4    conceivable that they would eventually change their minds and

5    negotiate a resolution.

6         On the other hand, it is crystal clear that the

7    requested vote change is not, in effect, a consensual

8    settlement.  It is seeking to undo a choice that had originally

9    been made.  I believe that there is not sufficient cause for

10   that result.

11        As I noted during oral argument, the best discussion

12   of Rule 3018 appears in In re J.C. Householder Land Trust #1,

13   502 B.R. 602 (Bankr. M.D. Fla. 2013), in which Judge Williamson

14   goes to great length to discuss the importance of an orderly

15   voting process, noting that permitting tactical or strategic

16   changes in a vote would "sharply shift the balance toward the

17   creditor that has obtained a blocking position," id. at 607

18   (or, I would say in this case, has forced a cramdown fight),

19   and, moreover, that such a process "creates a huge risk of

20   opportunistic behavior" that would "negatively impact the

21   otherwise orderly reorganization process."  Id. at 608.

22        Continuing on with that quote, "No creditor could ever

23   be confident in investing either their time or money in any

24   debtor-proposed plan so long as a blocking creditor might

25   arise.  Other creditors, moreover, might decide to change their

1  ballots for strategic reasons to gain leverage in what would be

2  never-ending negotiations.  All this leads to one unmistakable

3  conclusion.  Changing a vote to block confirmation cannot

4  constitute cause under Rule 3018."  Id.

5          Now, as noted, Judge Williamson in J.C. Householder

6  was dealing with a creditor who sought to change its vote to

7  block confirmation, but I think someone who wants to change

8  their vote to obtain an after-the-fact tactical advantage that

9  would not resolve confirmation on a consensual basis with the

10  plan proponent raises the same concerns with respect to the

11  plan confirmation process, regardless that Rule 3018 is silent,

12  as it is now, on the ability to seek to change one's vote after

13  the voting deadline has passed.

14          The noteholders also argue or come close to arguing,

15  at least, that even if the debtors and their allies are opposed

16  to the forced settlement--which I believe would not be a

17  complete settlement for the reasons I've stated--based on the

18  requested vote change, I should force it on them for various

19  facially appealing reasons cited by the movants, such as that

20  it would result in the end of litigation, the end of appeals

21  and, as stated on the record, the end of litigation not only in

22  the bankruptcy case with regard to the confirmation hearing,

23  but also in the intercreditor litigation that is pending before

24  me.

25          I think, however, that this is a choice that the

1    debtors and their allies should have the right to make on their

2    own.   I don't believe it is "cause" for me to, in such a

3    parochial way, force on plan proponents a "consensual" result

4    that the Court, but not the proponents themselves, believes is

5    advisable (even if I believed that, in fact, a settlement

6    ignoring the results of the confirmation hearing as if the

7    movants had originally voted to accept the plan would be fair,

8    which, as I stated during oral argument, I do not believe).

9         So, while there is, obviously, a high premium placed

10   on consensus, and I have repeatedly urged the parties, starting

11   well before the disclosure statement hearing, to reach

12   consensus, they have chosen not to do so.   I do not believe

13   these motions are, in fact, a choice to achieve consensus.

14        Accordingly, based on the exercise of my discretion

15   and my review of the applicable case law, I conclude that there

16   has not been a sufficient showing of cause to permit the votes

17   to be changed.

18        So I would ask the debtors to submit two orders

19   denying the relief.

20

21   Dated:     White Plains, New York
                September 17, 2014

22

23
                                   /s/ Robert D. Drain
24
                                   Hon. Robert D. Drain
25                                 United States Bankruptcy Judge